TEACHOUT V. VAN HOESEN.

False Representations: AS TO AMOUNT PAID FOR PROPERTY PUT IN
   CORPORATION: WHEN ACTIONABLE: WHO MAY SUE FOR.  Plaintiff
   was engaged in the ice business, of which business, defendant was
   ignorant. Plaintiff and B. had purchased, for $14,000, property used
   in conducting such business.  Plaintiff proposed to defendant, who
   was accustomed to consult him about business matters, that they
   and B. should organize a corporation for carrying on the ice busi-
   ness, representing that the property which he and B. had purchased
   for $14,000 had cost them $20,000, and proposing to turn it into the
   corporation at that price.  The corporation was organized with a
   stock of $30,000, of which plaintiff and B. each took $10,000, paying
   it with the aforesaid property, and defendant took the other for
   $10,000, paying for it in money.  The corporation was prosperous,
   and defendant afterwards sold his stock; but by way of counter-
   claim in this action he seeks to recover of plaintiff the damages he
   sustained by reason of plaintiff's said false representations.
   Held—

   (1) That the representations were not those of a mere vendor as to
       the value of his property, supported by a false statement as
       to what he paid for it, but were made between persons
       jointly entering into a business enterprise, trusting in the
       honesty of each other, and were actionable as the false repre-
       sentation of a fact, as distinguished from a mere expression
       of opinion as to the value of the property.

   (2) That the defendant, who was the party injured by the false
       representations, and not the corporation, to which the prop-
       erty was conveyed, was the proper party to maintain an
       action based on the false representations.

   (3) That the fact that defendant had sold his stock did not bar
       his right to maintain the action, since such sale was not an
       assignment of his right of action.  (See opinion for authori-
       ties cited.)

*Appeal from Polk District Court.*—HON. JOSIAH
                GIVEN, Judge.

FILED, OCTOBER 30, 1888.
VOL. 76—8

THE plaintiff was surety for the defendant upon a promissory note, and on the fourteenth day of December, 1886, paid the same, which then amounted to some $3,800. He brought this action to recover the sum so paid. The defendant admitted his liability to reimburse the plaintiff, but set up a counter-claim, in which he alleged that the plaintiff was liable to him in damages for false and fraudulent representations made in the matter of the organization of a corporation in which they were stockholders. The burden of proof was on the defendant to establish his counter-claim. There was a trial by jury. When the defendant had completed the introduction of his evidence, the plaintiff interposed a motion to direct the jury to return a verdict for the plaintiff for the full amount claimed by him, without regard to the counter-claim of the defendant. The motion was sustained, and a judgment was rendered for the plaintiff, and defendant appeals.

*Mitchell & Dudley* and *Finkbine & McClelland,* for appellant.

*Read & Read* and *Baylies & Baylies,* for appellee.

ROTHROCK, J.—I. The ultimate question to be determined is, was the court correct in holding as matter of law that upon the issues presented by the counter-claim and the evidence introduced in its support the defendant was not entitled to recover any damages? It is not necessary to set out the counter-claim in full. In its substance it charges the plaintiff with fraudulent representations to the damage and injury of the defendant preliminary to and at the time of organizing a corporation known as the "Des Moines Ice Company." The stockholders of that corporation were three in number. They were the plaintiff (who held his stock in the name of one Myers), one Branson, and the defendant. The alleged false and fraudulent representations consist in inducing the defendant to become a stockholder by representing that certain real estate upon

which there were ice-houses, and certain personal property used in carrying on the ice business, had been purchased by Teachout and Branson from one Grefe for the sum of $20,000, and it was put into the enterprise at that valuation, when in truth and fact the purchase was made for the sum of $14,000, and that Teachout and Branson thereby secured an advantage in the organization of the corporation to the amount of $6,000. There was a reply to the counter-claim, and motions and demurrers were filed and determined by the court. It is not necessary to notice the pleadings further, nor the rulings on the motions and demurrers, as the question presented for determination by the appeal will be apparent from a statement of the facts which the evidence tended to establish.

It appears from the evidence that the plaintiff was engaged in the ice business at Des Moines for several years prior to 1883, and the defendant was during the same time engaged as manager of the butter and egg business of Schermerhorn & Co., at the same place. The parties were well acquainted, and had more or less business relations, which consisted in the purchase of ice by defendant from plaintiff for use in the said business. On the sixteenth day of July, 1883, the firm of Branson & Co. entered into a written contract for the purchase of the real and personal property theretofore used by Grefe in conducting the ice business. The purchase price was $14,000, of which $2,050 was paid at the execution of the contract. The further sum of $2,950 was to be paid in cash on the first of November, 1883, at which time Branson & Co. were to take possession of the property sold; and the remainder of the purchase price, being $9,000, was to be secured by mortgage upon the property. Teachout was not known in this transaction. But from the inception of the enterprise he was one of the real parties in interest, and its most active promoter and managing spirit. The defendant had some money which he desired to invest, and frequently consulted Teachout, who was a successful business man, on the subject of business investments. After the contract was made for

the Grefe property, and about September, 1883, the plaintiff proposed that defendant should take an interest in the Grefe property and ice business. Teachout was then engaged in the business at another place in the city and desired to keep his interest in the new venture secret from the public, lest a rival company should start up, and he exacted a promise of secrecy from defendant as to the exact nature of the enterprise. He then told the defendant that he could have an interest in the business and property at cost. He represented to the defendant that the Grefe property and business cost $20,000, of which $11,000 was to be paid by November 1, 1883, and the deferred payment of $9,000 was to be secured by mortgage on the property, and paid in easy payments. Defendant had on hand about fifteen hundred dollars, and he agreed to invest that amount on the basis of the cost of the Grefe property, with the privilege of increasing his interest to one-third, and thereby hold an equal interest with Branson and Teachout. Afterwards the plaintiff proposed to defendant that the parties in interest should form a stock company or corporation instead of a partnership. The Grefe property and business were to be turned into the company on the same basis as it was to be turned into the partnership—at cost. The corporation was organized with a capital stock of three hundred shares of one hundred dollars each, amounting to $30,000. One hundred shares of the stock were issued to Branson, the same number to Myers for the benefit of Teachout, and at that time fifteen shares to the defendant. All of the money paid by the stockholders at that time was fifteen hundred dollars paid by the defendant. The Grefe property was conveyed to the corporation. Teachout and Branson paid for their stock $5,500 each, by turning over their interest in the Grefe property, and the Des Moines Ice Company obligated itself to pay the $9,000 deferred payment to Grefe. The defendant had an option to increase his subscription to place him on an equality with the other two corporate members, which he afterwards did by paying the further sum of $4,000 in cash. The defendant was induced to pay in $5,500 in

cash in the belief that Teachout and Branson had each paid out that sum in the purchase of the Grefe property, when in truth and fact they had paid but $5,000 in the aggregate.

It thus appears from the evidence that Teachout and Branson each obtained a one-third interest in the corporation by the payment of $2,500, and the defendant paid for his one-third interest the sum of $5,500. That he was induced to do so by the representation made by Teachout that the Grefe property cost $20,000, is not only sustained by the evidence, but, as the plaintiff introduced no evidence, it is uncontradicted. It further appears from the evidence that before this suit was commenced the defendant had sold his stock, and he is not now a stockholder in the corporation, and that the corporation paid dividends and was prosperous in its business during defendant's connection with it, and for aught that appears it is still successfully prosecuting its business. The motion to direct a verdict for the plaintiff was in writing, and was in these words : " *First.* That the evidence in behalf of defendant fails to show that there were any material false representations made by plaintiff to him as set forth in his counter-claim, but does show that plaintiff agreed with him that Branson & Co. would turn in to the Des Moines Ice Company the property purchased from Grefe at $20,000, and that the same was done in accordance with said agreement. *Second.* That the evidence shows that if any cause of action exists in favor of any one against the plaintiff, the same exists in favor of the Des Moines Ice Company, a corporation, and that the defendant, as a stockholder, does not show any right to maintain said action. *Third.* That the evidence shows that the defendant has parted with his interest in the Des Moines Ice Company ; that any cause of action that exists upon the facts shown is in favor of the Des Moines Ice Company ; and that the defendant has no interest therein, and can maintain no suit therefor. "

The first ground of the motion is to the effect that the evidence does not show that there were any material

false representations made by the plaintiff. That the defendant was deceived to his injury, and that Teachout profited by the deception, is apparent from the above statement of facts. It is wholly immaterial whether the stock paid dividends or not, or what amount the defendant received from the sale of his stock. The fact remains that, by the false representations of Teachout, he and Branson each acquired an interest in the venture equal to the interest of the defendant by the payment by each of less than half the amount paid by defendant. The defendant embarked in the business in the belief that Teachout and Branson had paid dollar for dollar with him, and this belief was generated in his mind by the false representations of Teachout. It is true, as claimed by plaintiff's counsel, that the defendant agreed with plaintiff that the Grefe property and business should be turned into the Des Moines Ice Company at $20,000, and that the same was done in accordance with the agreement. But this is no answer to the complaint that the plaintiff represented that $20,000 was the cost of the property, when the real purchase price was but $14,000.

Counsel for appellee insist that the representation as to the cost of the property was not an actionable false representation, because it was a mere affirmation of a seller on which a purchaser is not authorized to rely. In other words, it is claimed that the representation is akin to the representations of the value of property which a purchaser must ascertain for himself. The familiar cases of *Medbury v. Watson*, 6 Metc. 250, *Hemmer v. Cooper*, 8 Allen, 334, and other cases, are cited in support of the rule contended for by counsel. But it is apparent that the cited cases have no application to the facts in this case. It may be conceded that where parties meet on equal terms, as is said in the case of *Medbury v. Watson*, and the "vendor of real estate affirms to the vendee that his estate is worth so much, that he gave so much for it, that he has been offered so much for it, or that he has refused such a sum for it, though known by him to be false, and though uttered with a

view to deceive, are not actionable." These represen-
tations are regarded in the same light as representations
of value, which are mere opinions. On the other hand,
it was held in *Sandford v. Handy*, 23 Wend. 260, and
*Pendergast v. Reed*, 29 Md. 398, that a false affirmation
by a vendor as to the actual cost of property may
amount to an actionable false representation. The evi-
dence shows that the defendant had no knowledge of
the ice business. He relied upon the plaintiff as a con-
fidential adviser. He was enjoined by plaintiff to
secrecy in reference to the enterprise. The turning over
the property to the corporation was not a sale to the
defendant. The parties were jointly entering into a
business enterprise, trusting in the honesty of each
other, and they had the right to rely upon and expect
the utmost good faith from each other. The representa-
tion of the actual cost of the Grefe plant was the repre-
sentation of a fact, and not a mere opinion as to the
value of the property.

II. The second ground of the motion to instruct
the jury to return a verdict for the plaintiff is to the
effect that if a cause of action exists in favor of any
one it is in behalf of the Des Moines Ice Company, and
cannot be maintained by the defendant. In other
words, it is claimed that as Teachout sold the property
to the corporation, there was no privity between him
and the defendant, and as Teachout's obligation
was to convey to the corporation, he was bound to
convey at the cost price, and an action would lie by the
corporation for the benefit of all the stockholders. We
do not think this position is sound. It is to be remem-
bered that the fraud complained of had its inception
before the corporation was organized. It was a personal
transaction between individuals.. In making the rep-
resentations complained of the plaintiff was not acting
as the agent of the corporation, but for the promotion
of his own interest, and it seems that the reparation for
the wrong done should be made by the wrong-doer to the
person upon whom the injury was inflicted. The liability

of the person who makes false representations to a purchaser of stock in a corporation is fully sustained by the following authorities : Kerr, Fraud & M. 339, 341 ; Cook, Stocks, secs. 354, 355, 357 ; *Miller v. Barber*, 66 N. Y. 558 ; *Schwenck v. Naylor*, 102 N. Y. 683, 7 N. E. Rep. 788 ; *Short v. Stevenson*, 63 Pa. St. 95 ; *Paddock v. Fletcher*, 42 Vt. 389 ; *Vreeland v. N. J. Stone Co.*, 29 N. J. Eq. 188. The proposition that an action can only be maintained by the corporation finds a sufficient answer in the facts of this case. If a fraud was in fact perpetrated, as claimed by the defendant, the profits resulting therefrom were shared by Teachout and Branson, who were the owners of two-thirds of the capital stock of the corporation. The proposition that the defendant's wrongs are to be righted by an action by the corporation against the two stockholders who shared in the proceeds of the fraud would in effect be an invitation for the corporation to bring an action against itself. The promoters and organizers of corporations should be held to a strict accountability for their acts. They ought not to be permitted to use a corporation as a shield to protect them from personal liability for their fraudulent acts, and should be required to respond to the party injured by their frauds. As is well said in the case last above cited : "When a fraud is committed in the name and under cover of a corporation by persons having the right to speak for it for their personal gain and benefit, they are bound to answer personally for their wrongful acts. Their tongues uttered the false words, and their purses should pay the damages." We do not question the rule contended for by counsel for appellee that, where the fraud consists in inducing shareholders in a corporation to enter into a contract in their collective capacity, it is an injury to the corporate interests, and the corporation is the proper party to maintain an action for a reparation of the wrong. But that rule can have no application to the case at bar. The counter-claim in this case is founded upon a personal contract prior to the organization of the corporation. The false representation was

not made to any officer or agent of the corporation. It was made to the defendant to induce him to become a stockholder in a corporation to be thereafter organized. The plaintiff cannot be permitted to hide behind a corporation. He should come into open daylight, and meet the party injured by his fraud face to face. It will be remembered that we are discussing these questions upon the evidence introduced by the defendant. We do not know whether it is true or not, but for the purposes of this appeal it must be accepted as the truth.

III. The third ground of the motion is that the defendant cannot maintain his counter-claim because he has sold his stock and parted with all interest in the corporation. This is no defense to the recovery of damages for the alleged fraud. The sale of the stock did not operate as an assignment of his right of action for this fraud. It was a mere transfer of his interest in the corporation, and that interest would have been considerably more valuable, and presumably would have sold for more, if Teachout and Branson had each paid $5,500 for their stock, as they were bound in good faith to do to put them on an equality with the defendant. We think the court should have overruled the motion for a verdict, and required the plaintiff to proceed with the presentation of his side of the case.

REVERSED.