Argued September 17, reversed September 29, 1914.

# NEILSON v. MASTERS.

(143 Pac. 1132.)

**Fraud—Pleading—Knowledge of Defrauding Party.**

1.   Under Section 85, L. O. L., providing that in the construction of a pleading its allegations are to be liberally construed, and Section 64, abolishing all forms of pleading in actions at law, allegations in the answer that the principal defendant was induced to enter into the surety bond sued on by deceit and false representations, and that the representations were made to deceive defendants, who, relying thereon, did not make a detailed investigation, authorized the admission of evidence of the fraud, though it was not specifically alleged that plaintiff knew that the representations were false.

> [As to burden of proving the fairness of a transaction, see note in Ann. Cas. 1912A, 704.]

**Fraud—Pleading—"Scienter."**

2.   The term *"scienter"* imports knowledge and express knowledge of the falsity of the representations is not essential, but the *scienter* may be averred by a form implying knowledge.

**Contracts—Construction—General Rules.**

3.   Under Section 715, L. O. L., providing that the office of the court is simply to ascertain and declare what is, in terms or substance, contained in a contract, not to insert what has been omitted or to omit what has been inserted, and where there are several provisions such construction is, if possible, to be adopted as will give effect to all, where a modification of a contract for the clearing of land within a certain time, agreed to by the surety of the contractor, provides for an extension of time for doing the work in case the contractor is unable, by diligent effort, to procure two donkey-engines, the surety, to maintain the defense that the contractor is entitled to an extension, must show performance of condition.

From Multnomah: GEORGE N. DAVIS, Judge.

This is an action by William Neilson against C. Masters and the Title Guaranty & Surety Company on a surety bond for the faithful performance of a certain contract entered into between the plaintiff and the defendant, C. Masters. From a judgment for plaintiff in the sum of $6,100 the surety company appeals.

REVERSED.

For appellant there was a brief over the names of *Messrs. Emmons & Webster* and *Messrs. Latourette & Latourette,* with an oral argument by *Mr. J. R. Latourette.*

For respondent there was a brief over the names of *Mr. Robert J. Upton* and *Messrs. Manning & White,* with oral arguments by *Mr. Upton* and *Mr. Woodson T. Slater.*

Department 1.    MR. JUSTICE RAMSEY delivered the opinion of the court.

The plaintiff brought this action against C. Masters and the Title Guaranty & Surety Company, to recover $6,100 as damages.

On July 20, 1911, C. Masters and the plaintiff entered into a written contract by which Masters undertook to clear and plow for the plaintiff lots 1 to 12, inclusive, of Buena Vista Orchards, situated in Mosier, Wasco County, Oregon, according to the recorded plat thereof, for the total sum of $6,100. Five thousand seven hundred dollars of said sum was to be paid for clearing and plowing lots 1, 2, 3, 4a, 5, 6, 7a, 9 and 12, and the remaining $400 was to be paid for clearing and plowing lots 4b, 7b, 8, 10 and 11. Masters agreed to remove completely all trees, stumps, brush, scrub oak, the roots thereof and the loose rock to a depth of 12 inches below the surface, or to such a depth as would not interfere with the plowing of said land, etc. The land to be thus cleared consisted of about 120 acres. The plaintiff agreed to pay for said clearing and plowing the aggregate sum of $6,100. The clearing and plowing were to have been completed by February 1, 1912. There was a provision in the contract for a lim-

ited extension of time for the completion of the work *on a stated condition.*. Masters agreed to give a surety bond, conditioned for the faithful performance of said contract on his part. The defendant the Title Guaranty & Surety Company executed to the plaintiff a bond in the sum of $6,100 for the faithful performance of said contract on the part of Masters, and said bond was accepted by the plaintiff. The defendant Masters cleared and plowed a small portion of said land, and the time for completing it having expired, according to the contention of the plaintiff, the latter brought this action against Masters and said surety company on said bond to recover $6,100 as damages for the failure of Masters to clear and plow the said land according to said contract and the conditions of said bond. Process was not served on Masters, and he made no appearance in the case. As stated *supra,* a judgment was rendered in favor of the plaintiff and against the defendant company for $6,100. The defendant company appeals. The defendant company, in its answer, set up three separate defenses to the complaint. The first defense pleaded is fraud. There does not appear to have been any demurrer to any part of the answer. The plea of fraud contained in the answer is as follows:

"That plaintiff induced defendant C. Masters to enter into the aforementioned contract, Exhibit A, and induced the defendants to execute and deliver the aforementioned bond, Exhibit B, by deceit, fraud and false representations in the following particulars: First. Plaintiff fraudulently represented that there was very little rock in the country in which said lands were situated; that he, the plaintiff, had cleared 10 acres adjoining said land to be cleared, and that there were only two or three loads of rock thereon, that the

72 Or.—30

quantity of rock on said land to be cleared was almost negligible, and that the land consisted almost entirely of dirt to and below the depth to be plowed. Said representations were false in that the surrounding country consisted largely of rock; that there were 50 or 60 loads of rock removed from said adjoining 10 acres, all of which plaintiff dumped upon the land to be cleared by the defendant C. Masters; that the land to be cleared consisted almost entirely of rock below the surface, thereby rendering it more expensive and almost impossible to plow the same; that said representations were made for the purpose of deceiving defendants, who, believing and relying thereon, did not make a detailed investigation of the soil, and did not know the true condition thereof, and were led thereby to execute said contract, Exhibit A, and said bond, Exhibit B. Secondly. Plaintiff fraudulently represented that the water supply upon the land to be cleared was sufficient and adequate for all purposes of clearing and plowing; that the seasons were such that there was always an abundant supply of water upon the land to be cleared from early autumn until summer; that it never snowed in that country, excepting sometimes there would be a day or two of snow, which immediately disappeared from the ground, and which was of so little consequence as not to delay the clearing. Said representations were false in that there was at no time sufficient or adequate water upon the land or in the vicinity thereof for the purpose of clearing or plowing; that the seasons were such that there never was sufficient water upon the land or in the vicinity thereof for the purpose of clearing or plowing until after the snows melted late in the winter; that the snow as usual completely covered the ground for about a month, being the month of January; and that at no time did defendant Masters have sufficient water for the engine used in clearing said land, although in endeavoring to fulfill his contract he hauled water from long distances to operate said engine; that during the month of January he was unable to make any progress

while the snow covered the ground—all of which caused long delay and increased expenses never contemplated by defendant C. Masters; that said representations were made for the purpose of deceiving defendants, who, believing and relying thereon, did not make a detailed investigation, and did not know the true condition thereof, and were led thereby to enter into said contract, Exhibit A, and said bond Exhibit B.''

The plaintiff filed a reply, denying most of the allegations of the answer, including all of the allegations of fraud. The case was tried by a jury. After the plaintiff had put in his evidence in chief, the defendant company offered evidence tending to sustain the allegations of fraud contained in the answer and set out *supra.* To this evidence the counsel for the plaintiff objected, and the trial court sustained the objection, and gave, as a reason therefor, that in the opinion of that court the defense of fraud was not sufficiently pleaded, and the trial court refused to permit any evidence to be given to sustain the said allegations. The defendant company thereupon asked for leave to amend the answer by inserting therein an allegation, in substance, that the plaintiff, when he made the fraudulent representations set out in the answer, *knew* them to be false. The trial court refused to allow said amendment to be made.

1. The court below ruled out all evidence offered to show that the defendants were induced to enter into the contract and the surety bond by the fraudulent representations of the plaintiff, for the reason that the plea of fraud did not contain allegations that the plaintiff, when he made the supposed fraudulent representations, *knew them to be false.* We understand from the briefs and the oral argument that that was the ground of the objection, and that the court below excluded the

evidence for that reason. The answer alleges that the plaintiff induced the defendant Masters to enter into the contract, and the defendants to execute and deliver the said surety bond "by deceit, fraud and false representations," and then sets out the supposed fraudulent representations in detail, and, after so stating the supposed fraudulent representations, the answer contains the following averments relating thereto:

"That said representations were made for the purpose of deceiving defendants, who, believing and relying thereon, did not make a detailed investigation, and did not know the true conditions thereof, and were led thereby to enter into said contract and said bond, Exhibit B."

The plea alleges, also, that said representations were false. The representations are set out in detail; they are alleged to have been false, and to constitute "deceit and fraud," and finally, it is alleged, that *they were made* for the purpose of deceiving the defendants, etc. It is true that the plea of fraud contained no *express* allegation that the plaintiff knew the representations made by him *to be false.* But it is expressly averred that *they were false* and that they were fraudulently made and that they were made for the purpose of deceiving the defendants. He could not have intended or purposed to deceive the defendants by making representations *that he believed to be true.* The fact that he made false representations *fraudulently,* and *for the purpose of deceiving the defendants,* necessarily imports, that he knew the representations to be false. In the construction of a pleading, for the purpose of determining its effects, its allegations are required to be liberally construed, with a view of doing substantial justice between the parties: Section 85, L. O. L. All

*forms* of pleading in actions at law are abolished: Section 64, L. O. L.

2. In *Rolfes* v. *Russell,* 5 Or. 400, the complaint alleged that the defendant made certain stated representations concerning the character, quality and boundaries of a certain piece of land purchased by the plaintiff of the defendant, and then averred that said representations were false, and that certain damage resulted to the plaintiff; but the complaint did not allege, *in any manner,* that the defendant *knew* that said representations were false, or that they were made for the purpose of deceiving the plaintiff, or that they were fraudulently made. Passing on said complaint, on appeal, the court says:

"The gist of this class of actions being *fraud,* in order to maintain them it is necessary to aver and prove: (1) That the representations made were false; (2) that defendants *knew* them to be false; (3) that they were made with intent to defraud; and (4) that plaintiff, relying upon the representations, was induced to enter into the contract. * * By an examination of the complaint in this case; it will be seen that it does not contain any allegation that the defendants *knew* that the representations, alleged to have been made by them to the plaintiff, were false, or that said representations were made with an intention to deceive or defraud the plaintiff; nor does it contain a general allegation that said representations were fraudulent; but the only allegation contained in the complaint, on this subject is that said representations 'are and were wholly false.' * * Thus it will be seen that no '*scienter*' is alleged in the complaint, nor is there any other fact alleged which is equivalent to such an allegation."

The term "*scienter*" imports knowledge, and it appears from the citation, just set out, that an express allegation of knowledge of the falsity of the repre-

sentations is not essential, but that a *scienter* may be averred in some other form that necessarily implies knowledge of the falsity of the representations made.

In *Schoellhamer* v. *Rometsch,* 26 Or. 394 (38 Pac. 344), Mr. Justice Bean reviews the decision in *Rolfes* v. *Russell,* 5 Or. 400, and holds, that when there is an allegation that the defendant knew the representations to be false, it is not necessary that there be an allegation, also, that the representations "were made with intent to deceive the plaintiff," and adds:

"In fact, it is difficult to understand how an allegation that defendant made the false representations with intent to deceive the plaintiff could have made his intention any more apparent than now appears from the complaint."

In *Cawston* v. *Sturgis,* 29 Or. 335, 336 (43 Pac. 657), the court says:

"An action of deceit will lie against one who makes a false representation of a material fact upon which another acts to his injury, knowing it to be false, *or when he makes it recklessly as of his own knowledge,* without knowing whether it is true or not. * * Nor do we think there is anything in *Rolfes* v. *Russell,* 5 Or. 400, in conflict with this view, when the opinion is read in the light of the facts upon which it is based, and the question actually before the court at the time."

In *Martin* v. *Eagle Development Co.,* 41 Or. 455 (69 Pac. 218), the court says:

"As essential elements to sustain it [a defense based on fraud and deceit], there must have been false representations of material import concerning the subject matter of the contract, the plaintiffs knowing them to be false, or representations as of their own knowledge, not knowing the truth whereof they spoke, for the purpose of misleading and deceiving the development company, and the company must have relied upon such rep-

sentations, believing them to be true, and was misled thereby, to its injury.''

There are other cases decided by this court in which representations relied upon to constitute fraud were discussed; but we believe that none of them is based on allegations substantially the same as those relied upon in this case. The opinion of the court in every case shall be 'construed with reference to the facts before the court when it was written. Few opinions of considerable length are wholly free from *dicta*.

In Volume 8, Ency. Pl. & Pr., pages 901, 902, the rule is stated thus:

''As a general rule, false representations, not being fraudulent or actionable, unless made with knowledge of their falsity, or stated as the truth when the person has no knowledge on the subject, *scienter* must be expressly alleged in a declaration or complaint for false representation and deceit, *or specific allegations must be used which sufficiently import knowledge.*''

In *Hoffman* v. *Gill,* 102 Mo. App. 324 (77 S. W. 147), the court says:

''Defendant insists that, as the petition does not allege that the defendant *falsely, fraudulently* and *knowingly* made the statements, etc., it is wholly insufficient to support a judgment. The petition charges that 'the defendant *corruptly* and *fraudulently,* with the intent to cheat and defraud the plaintiff,' etc. *This allegation* is sufficient in a pleading *to charge fraud in any court.*''

In *Steip* v. *Seguine,* 66 N. J. Law, 372 (49 Atl. 715), the court says:

''This declaration, in all respects, conforms to precedents of actions for deceit. It charges that the defendants falsely, fraudulently and deceitfully represented to the said plaintiff, etc. As a matter of pleading,

*fraudulenter* without *sciens,* or *sciens* without *fraudulenter,* would be sufficient.''

In *Forsyth* v. *Vehmeyer,* 176 Ill. 359 (52 N. E. 55), the syllabus is in part:

''An allegation in a declaration that certain representations by the defendant for the purpose of obtaining money were *falsely* and *fraudulently* made *implies that the defendant was aware of their falsity.*''

In *Beebe* v. *Knapp,* 28 Mich. 57, 58, the court says:

''The representations are alleged to be fraudulent, and to be false and fraudulent, and therefore that the plaintiff was, by the defendants, falsely and fraudulently deceived on said sale and deprived of the use of his horses. As to the want of a *scienter,* it is true the declaration does not, *in so many words,* allege that the defendants at the time 'well knew that the said note was not good, and the maker irresponsible,' but it does allege that they 'falsely and fraudulently' represented the note to be good and the maker responsible. This term 'fraudulently,' in this connection, of itself *implies knowledge* of the falsehood of the representations, or sufficient knowledge, at least, to render them liable for the consequences of the fraud.''

In *Furnas* v. *Friday,* 102 Ind. 129 (1 N. E. 206), the syllabus is in part:

''It is not necessary to aver in a complaint to recover for damages resulting from a fraudulent representation that it was *known* to be untrue by the person by whom it was made.''

In *Thomas* v. *Beebe,* 25 N. Y. 246, the court says:

''It is stated in the complaint that the defendant 'falsely and fraudulently represented and alleged that the farm contained 90 acres,' and that the farm actually contained less than 80 acres. It is not stated that the defendant *knew* that the farm did not contain 90

acres.    The complaint is doubtless sufficient [*Bayard* v.* Malcolm,* 2 Johns. 550, 3 Am. Dec. 450]," etc.

In *Bank of Montreal* v. *Thayer* (C. C.), 7 Fed. 622, the syllabus in part is:

"In an action for false and fraudulent representations, the allegation that such representations were wrongful, false and fraudulent, is sufficient, where the said representations have been set out with due particularity."

See, also, *Vaughn* v. *Smith,* 34 Or. 56, 57 (55 Pac. 99), and *Joplin* v. *Nunnelly,* 67 Or. 566 (134 Pac. 1179).

In this case the answer alleges that the plaintiff induced the defendants to execute and deliver the bond sued on and the contract for the clearing and plowing of the land by "deceit, fraud and fraudulent representations," and it then sets out particularly the said representations and avers that they were made "fraudulently"; and, after setting out said representations, the answer avers:

"That said representations were made for the purpose of deceiving defendants, who, believing and relying thereon, did not make a detailed investigation, and did not know the true condition thereof, and were led thereby to enter into said contract," etc.

The answer alleges, also, that said representations are false.

Some decisions hold that it is not necessary, in all cases, to aver a *scienter;* but we hold that, assuming it to be necessary to allege a *scienter,* it is not necessary to do so in *express terms,* and that when the averments of fraud are stated in terms that necessarily imply that the person making the representations knew their falsity, the pleading is sufficient in that respect.

It follows from what has been said that the evidence offered by the defendant, tending to prove the plea of fraud, should have been admitted by the court below, and that the court erred in excluding it.

3. The second defense pleaded in the answer is based upon the following provisions of the contract of September 7, 1911, entered into by and between the plaintiff and C. Masters, and assented to by the defendant company, to wit:

"Whereas, William Neilson and C. Masters entered into a certain contract in writing, dated July 20, 1911, whereby C. Masters is to clear and plow certain land situated in Wasco County, Oregon, which land is more fully described in said contract; and whereas, the parties thereto have mutually agreed to change certain terms and parts of said contract, all of which changes are hereinbelow stated, therefore: This agreement witnesseth, that for and in consideration of the mutual covenants of the parties hereto, the said C. Masters, known as the contractor, agrees to use in the clearing of said land described in the contract of July 20, 1911, two (2) donkey-engines; and if two (2) donkey-engines are placed on said land and used in the clearing thereof, then the said William Neilson agrees to pay unto C. Masters, at the times and in the manner specified in the former contract, the sum of $6,300.00, the same being $200.00 in addition to $6,100.00, the price agreed on in the former contract of July 20, 1911; but if two (2) donkey-engines are not used on said land in the clearing thereof, then the original price of $6,100.00, only, is to be paid for the work done as specified in said contract when the same is completed.

"*If it is impossible* to obtain a second donkey-engine after making diligent and *bona fide* efforts to do so, then the said William Neilson agrees to extend the time of completion of the contract for the clearing and plowing of said land as many days after the first day of February, 1912, as there were days after the first day

of October, 1911, on which there was an insufficient supply of water for the donkey-engine used in the clearing of said land.''

In 9 Cyc., page 577, the rule for construing contracts is stated thus:

''The first and main rule of construction is that the intent of the parties as expressed in the words they have used must govern. Greater regard is to be had to the clear intent of the parties than to any particular words which they have used in the expression of their intent. *If the words used clearly show the intention, there is no need for applying any technical rules of construction, for where there is no doubt, there is no room for construction.''*

The contract set out *supra*, provides: (a) That C. Masters should use, in clearing the land, two donkey-engines; (b) that if he should use two donkey-engines in clearing then Neilson, the plaintiff, would pay him for all the work $6,300, but that if he should use only one engine, he would be paid only $6,100, or $200 less than he would be entitled to receive if he should use two donkey-engines; (c) if it should be impossible for Masters, by making diligent and *bona fide* efforts to do so, to obtain a second donkey-engine for use, *in that event*, Neilson agreed to extend the time for completing the contract for the clearing and plowing of said land as many days after the 1st day of February, 1912, as there were days after the 1st day of October, 1911, on which there was an insufficient supply of water for the donkey-engine used in the clearing of said land. But if it was possible for him by diligent and *bona fide* efforts to obtain the second engine for use in clearing the land, then, under the terms of this strangely worded contract, it seems that he was not entitled to an extension of time for the

completion of the contract. The original contract provides that the clearing and plowing shall be completed by February 1, 1912, and time is declared to be of the essence of the contract. The supplemental contract executed September 7, 1911, a part of which is set out *supra,* provides for an extension of time for completion of the contract upon the *condition*, that it should be impossible for Masters, by diligent and *bona fide* efforts, to obtain the second donkey-engine for use in the clearing. In order, then, for the defendant company to defend successfully on the ground that Masters was entitled to an extension of time for completion of the contract, it must allege, among other things, and, if the averment be denied, prove that it was impossible for Masters, by diligent and *bona fide* efforts, to obtain for use in clearing the land the second donkey-engine, etc. Unless it can do this, it has no defense on the ground that the plaintiff refused to allow any extension of time for completing the contract.

The evidence tends to prove that the contract for clearing and plowing said land was a hard one for the defendant Masters; but, unless it was vitiated by fraud, it is binding on him. Courts cannot make contracts for parties, and it is incumbent on them to enforce contracts as the parties thereto have made them, unless they are voidable for fraud. Parties should be very careful and cautious, in making contracts, to safeguard their respective rights, by seeing that they are properly worded and that everything that is intended to be a part of the contract is clearly expressed in the written draft thereof.

The office of the judge or court is simply to ascertain and declare what is, in terms or substance, contained

in a contract, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all parts of the contract: Section 715, L. O. L.

We do not find it necessary to pass upon any other questions. We find that the exclusion of the evidence offered by the defendant company to prove fraud was prejudicial error.

The judgment of the court below is reversed, and the case remanded for a new trial in accordance with the terms of this opinion.

                              Reversed and Remanded.

Mr. Chief Justice McBride, Mr. Justice Moore and Mr. Justice Burnett concur.