Argued December 18, 1917, affirmed January 8, 1918.

# PURDY *v.* UNDERWOOD.*

(169 Pac. 536.)

**Fraud—Statement of Material Facts—Good Faith.**

1. Where a vendor of land by the acre states there are a certain number of acres in the tract, it renders him responsible for damages if there are less than stated, although he believed it to contain such amount.

**Fraud—Sales of Land—Measure of Damages.**

2. Where a purchaser buys what the vendor states to be 112.5 acres of land at $50 per acre and there are only 78.76 acres, the vendee is entitled to recover the excess paid in an action for fraud, even though he sold the same for as much as he paid without knowledge of the shortage; although the measure of damages is different where property is exchanged, the measure of damages in such case being the difference between the value of the property given and that received.

**Mortgages—Deed Given as Security—Evidence.**

3. Evidence *held* sufficient to warrant a finding that a deed absolute in form was intended only as security for a loan.

**Mortgages—Deed Given to Secure Loan—Title.**

4. A deed absolute in form given to secure a loan does not pass the title and is nothing more than a "mortgage."

[As to liability of vendor of realty for false representations innocently made, see note in **Ann. Cas.** 1913C, 63.]

From Clackamas: JAMES U. CAMPBELL, Judge.

Department 2.     Statement by MR. JUSTICE MOORE.

This is an action to recover damages for alleged fraudulent representations. The facts involved are that on June 29, 1910, the defendant was the owner in Marion County, Oregon, of a tract of land the boundaries of a part of which he pointed out to the plaintiff telling him the real property contained 112.5 acres. The price demanded by the defendant was $55 an acre, but he offered to take in cash $50 and thereupon a bar-

---

*On measure of damages for fraudulent representations in the sale or exchange of real estate, see notes in 8 **L. R. A.** (N. S.) 804; 16 **L. R. A.** (N. S.) 818.

On parol evidence that a written instrument which on its face imports a complete transfer of a legal or equitable estate or interest in property was intended to operate as a mortgage or pledge, see comprehensive note in **L. R. A.** 1915B, 18.      REPORTER.

gain was concluded whereby the plaintiff paid $5,625 and received a warranty deed describing the premises by metes and bounds "and containing in all 112½ acres of land, more or less." The plaintiff in October, 1911, for the expressed consideration of one dollar, executed to his wife, Ella Purdy, a warranty deed conveying the land by the same description and asserting that the premises contained the same area as set forth in the deed which he received from the defendant. About December 1, 1915, the plaintiff procured a survey of the real property, much of which was covered with brush, and the boundaries being very irregular, he then discovered that the premises contained only 78.76 acres.

This action was commenced January 29, 1916, the complaint charging that the defendant intending to cheat and defraud the plaintiff, falsely and fraudulently represented to him that the land contained the number of acres as stated; that the plaintiff not knowing the area of the premises, but believing and relying upon the statements so made by the defendant, paid him at the rate of $50 an acre, and thereafter discovered that the realty contained only 78.76 acres; that such representations were known by the defendant to be false when they were uttered, particularly stating wherein they were untrue, and that by reason thereof the plaintiff had been damaged, etc.

The answer denied the material averments of the complaint, and for a further defense alleged that on October 2, 1911, for the full and valuable consideration demanded by the plaintiff, he sold and conveyed the entire real property to Ella Purdy, who ever since has been and then was the owner thereof, and that the plaintiff had no right, title, claim or interest of any kind whatever in or to the land or any part thereof. A demurrer to the allegations of new matter in the an-

swer on the ground that the facts stated were insufficient to constitute a defense, was sustained. By stipulation of the parties the cause was tried without the intervention of a jury, whereupon the court from the evidence received made findings of fact and of law in conformity with the averments of the complaint, and thereupon rendered judgment for $1,687 against the defendant and he appeals.            AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. C. Schuebel* and *Mr. Livy Stipp.*

For respondent there was a brief over the name of *Messrs. Brownell & Sievers,* with an oral argument by *Mr. Charles T. Sievers, Jr.*

MR. JUSTICE MOORE delivered the opinion of the court.

This action is not founded upon an alleged breach of warranty as to the number of acres specified in the deed, which instrument it will be remembered limits the premises particularly described by metes and bounds, by the clause "and containing in all 112½ acres of land, more or less." A text-writer in speaking of such a restriction says:

"When land is described, and the quantity is stated with the qualification 'more or less' these words are used as an approximate designation of the quantity contained within the boundaries, and do not refer to the state of the title": Devlin on Deeds, § 1046.

This author further remarks:

"Neither party has a remedy against the other for the excess or deficiency unless the difference is so great as to afford a presumption of fraud": Devlin on Deeds, § 1044.

In a note to the case of *Kitzman* v. *Carl,* 12 Ann. Cas. 296, 297 (133 Iowa, 340, 110 N. W. 587), it is observed:

"The general rule is, that where land is sold by metes and bounds or by a definite description, and is

estimated to contain a specific quantity, qualified by the words 'more or less,' the recital of the words 'more or less' implies a waiver of the warranty as to the specific quantity on the part of the buyer, and an agreement on the part of the seller not to demand more than the fixed price. By the use of these words the statement of the number of acres becomes descriptive merely, and not of the essence of the contract. The vendor assumes the risk as to the price paid, and the vendee assumes the risk as to the quantity of the land.''

At page 299 of the volume mentioned it is further said:

''Where the difference between the real and the represented quantity of land sold, especially in the sale of land by the acre, is so great as to indicate mistake, the words 'more or less' will not cover it, inasmuch as they are construed to apply to a reasonable excess or deficit, and in such cases a court of equity will grant relief.''

Whether or not these rules are controlling herein is unimportant for the question is not involved, since the complaint does not refer to any covenant contained in the deed, and the action is predicated upon the alleged fraud and deceit of the defendant in representing that the land conveyed contained a specified number of acres, when the area of the premises was only 70 per cent thereof.

1. The evidence shows that when the defendant purchased the real property in question his grantor stated to him the premises contained 112.5 acres; that the land had not been surveyed nor did Mr. Underwood know the actual contents thereof, except as thus informed; and that he told the plaintiff, when he pointed out to him a part of the boundaries, that the realty included the number of acres so specified. This representation was material and though false it was not consciously so, but that is immaterial for the statement

having been made without knowledge of its truth and believed and relied upon by the plaintiff renders the defendant responsible for the resulting damages: Kerr on Fraud, 54; Smith, Law of Fraud, § 45; *Cawston* v. *Sturgis*, 29 Or. 331 (43 Pac. 656); *Poppleton* v. *Bryan*, 36 Or. 69 (58 Pac. 767); *Darling* v. *Miles*, 57 Or. 593 (111 Pac. 702, 112 Pac. 1084); *Bonelli* v. *Burton*, 61 Or. 429 (123 Pac. 37); *Joplin* v. *Nunnelly*, 67 Or. 566 (134 Pac. 1177); *McFarland* v. *Carlsbad Hot Springs Sanatorium Co.*, 68 Or. 530 (137 Pac. 209, Ann. Cas. 1915C, 555); *Neilson* v. *Masters*, 72 Or. 463 (143 Pac. 1132); *Robertson* v. *Frey*, 72 Or. 599 (144 Pac. 128); *Jeffreys* v. *Weekly*, 81 Or. 140 (158 Pac. 522).

2. It is argued by defendant's counsel that the plaintiff is not entitled to recover herein, because he sold and conveyed to his wife the real property by the same descriptions and covenants as set forth in the deed that he secured, which transfer of the title was made while he was ignorant of a shortage in the stated area of the land, and as he is not responsible to her for any deficiency in the number of acres he did not sustain any damages and for that reason an error was committed in refusing to make a finding as requested and in rendering the judgment given him. In 20 Cyc. 136, it is said:

"The rule established by the weight of authority appears to be that if a purchaser, through fraud practiced upon him, has paid a higher price than the property was worth, and the fraud is actionable in its character, then he is entitled to recover for the injury occasioned by such fraud, notwithstanding any subsequent disposition he may make of the property, and hence a recovery cannot be defeated, or the amount of damages reduced, by showing that plaintiff has sold the property for the same amount that he paid for it, or for a larger amount than he claims its real value to have been."

See, also, upon this subject, Smith, Law of Fraud, §§ 250 and 298. In *Medbury* v. *Watson,* 6 Met. (47 Mass.) 246, 256 (39 Am. Dec. 726), in discussing this subject, Mr. Justice HUBBARD states the contention made by a party and gives the reason for refuting it. He says:

"But it is further argued that the father, having sold out his share of the property for the same amount which he gave, has sustained no loss, and so there can be no recovery by the present plaintiffs. But this suggestion, though plausible, is not sound. What the party sold the property for, is not the rule by which to measure the damages; otherwise, it might make the question of fraud to depend upon the rise or fall of the property in the market, upon fluctuations in the value, arising from causes in no way connected with the fraud complained of. As well might an underwriter contend that the insured has sustained no injury, because his goods, though partially damaged by a peril insured against, have sold, even in their damaged state, for more than the actual cost. If the father, through fraud practiced upon him, paid a higher price than the estate was worth, and the fraud was actionable in its character, then he is entitled to recover for the injury occasioned by such fraud, whatever disposition he afterwards made of the property; whether he sold it or gave it away."

In *Teachout* v. *Van Hoesen,* 76 Iowa, 113 (40 N. W. 96, 14 Am. St. Rep. 206, 1 L. R. A. 664), it was ruled that the fact that a person had sold all his stock in a corporation did not prevent him from maintaining an action for fraudulent representations whereby he was induced to become a stockholder therein.

In *McKay* v. *McCarthy,* 146 Iowa, 546 (123 N. W. 755, 34 L. R. A. (N. S.) 911), it was held that the fact that one defrauded into purchasing stock of a corporation had parted with it did not affect his right to hold the

person guilty of the fraud liable for the damages caused thereby.

It is contended by defendant's counsel that the rule thus recognized is not available in Oregon where the measure of damages in such cases is the difference between the actual value of the property at the time of the purchase and the price paid therefor, and that as the plaintiff, for a valuable consideration, sold and conveyed the real property as containing 112.5 acres, before he knew of the deficiency in the area of the premises, he sustained no damages, citing in support of the principle so asserted, 20 Cyc. 42 and 43. They also call attention to decisions of this court which will be reviewed. Thus in *McMillan* v. *Batten,* 52 Or. 218 (96 Pac. 675), the defendant sought to rescind a sale of shares of corporate stock on the ground of fraud and deceit. No damages were demanded but a recovery of the purchase price in assumpsit as money had and received was asked.

In *Sperry* v. *Stennick,* 64 Or. 96 (129 Pac. 130), the plaintiffs were the holders of many shares of the capital stock of a corporation, which legal entity was induced, by the defendant's fraudulent representations, to pay $7,000 on account of the purchase of a supposed interest in land, taking a deed therefor. The plaintiffs thereupon surrendered all their interest in the corporation, obtained from it, for a valuable consideration, a deed of the supposed estate in the land and thereafter learning of the fraud, they elected to rescind, tendered a reconveyance and demanded a repayment of the $7,000 as money had and received. No damages were demanded in that case.

In *Salisbury* v. *Goddard,* 79 Or. 593, 600 (156 Pac. 261), which was an action, without rescission, to recover damages for alleged false representations

whereby an exchange of property was consummated. In deciding that case it was said:

"If, therefore, the plaintiffs received property of equal value of the lot which they conveyed, and the money they paid, they were not injured and sustained no damages."

In that case the worth of the property received could be established only by testimony, while evidence of the mere amount of money paid was sufficient to substantiate that fact since such medium of exchange is the measure and representative of all values. The legal principle invoked by defendant's counsel is applicable where property is exchanged. The conclusion thus reached does not contravene the rule announced in *Alden* v. *Wright,* 47 Minn. 225 (49 N. W. 767), which is cited in 20 Cyc. 43, as upholding the doctrine for which defendant's counsel contend. In that case, which was an action of deceit, real property was exchanged for shares of corporate stock, and it was held that the measure of damages was the difference between the value of such shares and the property received therefor. When, however, as in the case at bar, a specified sum of money is paid for each integral part of property expected to be received, a failure to transfer a portion thereof at such ratable price, constitutes the measure of damages sustained. Thus as was said by the court in *Rockefeller* v. *Merritt,* 76 Fed. 909 (35 L. R. A. 633, 638, 22 C. C. A. 608):

"If a vendor represents to a purchaser that a tract of land contains 10 acres more than it actually measures, and thereby induces him to buy and pay for it at the rate of $30 per acre, he is estopped from showing that the land was of less value, because the purchaser has actually paid and lost $30 per acre upon the 10 acres that did not exist."

3. The evidence fails to show the amount of the consideration which was paid by Mrs. Purdy for the land described in the deed executed to her by her husband. Mr. Purdy, explaining how he came to give such deed, testified:

"Well, she had let me have money at different times and I just made her a deed out to the place for the money I had borrowed from her.

"Q. Well, was there any understanding between you?

"A. Yes, there was an understanding.

"Q. Well, what was it?

"A. Well, I just agreed—I was willing to make her a deed to the place on account of getting this money from her. That's all I guess. It was her own—I say she had money and I wanted to use it, and I just borrowed the money of her and made her out a deed to the place.

"Q. What did you do with the money? You say you borrowed money from her, did you spend it on the place?

"A. Yes, sir, for cows used to improve the place."

This is the entire testimony that was given on this branch of the case. It is reasonable to infer therefrom that though the deed which was executed by the plaintiff to his wife was absolute in form, it was intended by them when the sealed instrument was made, that it should be security for the payment of the money which he borrowed from her, the amount of which, the time of its payment, and the rate of interest not being disclosed. If the deed was executed under such circumstances, the legal title to the land did not pass by a delivery of the writing, which document was nothing more than a mortgage: *Adair* v. *Adair,* 22 Or. 115 (29 Pac. 193) ; *Marx* v. *La Rocque,* 27 Or. 45 (39 Pac. 401) ; *Security Savings and Trust Co.* v. *Loewenberg,* 38 Or.

159 (62 Pac. 647); *Kinney* v. *Smith,* 58 Or. 158 (113 Pac. 854).

4. Though the evidence fails to show what consideration was given by Mrs. Purdy for the land, it will be assumed without deciding the question, that her deed was intended to be absolute, and whether she gave only one dollar as stated in the instrument, or paid more than the defendant received for the land is unimportant, for the plaintiff was legally entitled to make such disposition of the real property as he pleased. As he paid for the premises $1,687 more than the land was worth at the price per acre as agreed upon, he is entitled to recover that sum by reason of the defendant's misrepresentations. No error was committed as alleged.

It follows that the judgment should be affirmed and it is so ordered.    AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MCCAMANT and MR. JUSTICE BEAN concur.