Valda K. HERRON, Plaintiff,

v.

**MILLERS NATIONAL INSURANCE COMPANY, a corporation, and W. B. Herron, Defendants.**

Civ. No. 7975.

United States District Court
D. Oregon.

May 23, 1960.

A. W. Pedersen and John F. Reynolds, Portland, Or., for Valda Herron, (who is out of the case now).

Clifford Carlsen, Jr., of King, Miller, Anderson, Nash & Yerke, Portland, Or., for defendant Insurance Company.

W. B. Herron, in pro. per.

KILKENNY, District Judge.

This case involves the segregated issue on the right of the plaintiff and the defendant W. B. Herron to recover on two fire insurance policies issued by defendant company. One of the policies, in the sum of $5,000, insured a house located near Corvallis, Oregon, this policy being issued on July 24, 1953. An endorsement to the policy in the sum of $1,000 dated October 7, 1953, covered certain furniture located in said house. The second policy was dated September 29, 1953, in the sum of $5,000, and covered certain bulk oil plant equipment located upon the property on which the house was situated.

A fire occurred on the premises on February 27, 1954, destroying the house. The Herrons claim that the fire damaged and destroyed all or practically all of the personal property insured. On April 13, 1954, defendant Herron forwarded to the insurance company certain documents purporting to be proofs of loss. On May 22, 1954, the insurance company, by writing, requested a great deal of ad-

ditional information, particularly with reference to the personal property.

Defendant Herron employed an attorney and this attorney requested additional time in which to file amended proofs of loss. This request was granted. The request for additional information was received by the Herrons, but this additional information was never furnished, either by way of an additional statement, amended proof of loss, or otherwise. In the meantime, the insurance company made a thorough investigation of the fire and fully informed itself with reference to the building which was destroyed, but was unable to obtain satisfactory information on the personal property insured by the second policy. The insurance company defends the action on the basis that the Herrons violated two written provisions of the insurance policies.

A. The insurance policies provided:

"This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

The insurance company claims that the Herrons violated this provision in two particulars:

■■■ 1. In the proof of loss the Herrons represented that the legal title to the dwelling and home furnishings were vested in W. B. and Valda K. Herron. A deed in evidence would indicate that the Herrons transferred the real property to Viola Cruikshank. Plaintiff testified that this deed was given for the purpose of securing the repayment of a loan in the sum of $200 and that actual ownership had always remained in the Herrons. The record also shows that defendant Herron assigned the proceeds of the policy to Viola Cruikshank. I was impressed with the testimony of Mrs. Herron on this point and I believe that in truth and in fact this deed was given for security purposes and not for the purpose of transferring title. A deed, although absolute on its face, if given as security for an indebtedness, is in truth and in fact a mortgage. Libel v. Pierce, 147 Or. 132, 31 P.2d 1106; Conley v. Henderson, 158 Or. 309, 75 P.2d 746. Such a deed does not pass title and is nothing more than a mortgage. Purdy v. Underwood, 87 Or. 56, 169 P. 536; Murray v. Wiley, 169 Or. 381, 127 P.2d 112, 129 P.2d 66.

On the record in this case I hold that the deed to Viola Cruikshank was nothing more than a mortgage and that the Herrons did not violate the provisions of the policy by claiming that they were the legal owners of the property.

2. The company also claimed that the value of various items of household equipment was substantially overstated and that such would constitute a breach of the aforesaid provision of the policy. It is true that there is a substantial difference between the values as testified to by plaintiff and the values as claimed by the witnesses for the company and that the plaintiff has made conflicting statements with reference to her knowledge of the property. I feel that the differences in valuations could be an honest difference of opinion and that the higher valuation did not indicate fraud on the part of the assureds. Walker v. Fireman's Fund Insurance Co., 114 Or. 545, 234 P. 542.

■■■ Since I am going to dispose of the claim under the second policy under another provision, I do not believe it necessary to continue the present discussion insofar as it might effect the assureds' claim under such policy.

B. Both policies contained the following provision:

"The insured shall give immediate written notice to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete in-

ventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; and within sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and, if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged. The insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made."

The record is conclusive that the Herrons failed to furnish what appears to be necessary and material information with reference to original cost, date of purchase, name of seller and other factors which would determine value and ownership of the household furniture and equipment mentioned in the endorsement on one policy, and the bulk oil plant equipment insured by the second policy. The record affirmatively shows that the attorney for the Herrons considered it necessary to furnish this information and to file amended returns. It is clear that they cooperated neither with their attorney nor with the company on this very important subject. The provisions on which the company relies are part of the Oregon law. ORS 744.100. These were provisions which the insurance company had a right to incorporate in the policies. The record is undisputed that most of the personal property covered by the second policy disappeared from the premises shortly after the fire. The Herrons were under a contractual duty to keep this property for inspection by the insurance company. This they failed to do. Furthermore, they failed to submit additional information which the company requested and which the Herrons' attorney thought proper. Even at the time of the trial the Herrons made no attempt to submit such information.

By the very nature of things the insurance company is obliged to look to the insured for the ascertainment of the actual loss sustained and hence, it is required of the insured that he, under the penalty of forfeiture of his right to enforce the contract, faithfully and truly answer questions touching the amount of the loss. Fowler v. Phoenix Insurance Co., 35 Or. 559, 564, 57 P. 421.

This rule should be invoked against the Herrons on the bulk oil plant equipment. The record shows that some of this equipment was never located on the property in question and therefore could not have been destroyed in the fire. I hold that very little damage was sustained to the balance of such property and that the same was removed from

the premises before the company could investigate and determine the nature and extent of the loss. This is not true with reference to the household furniture and equipment covered by the other policy. Not only did the company investigate the loss under this policy, but its investigator testified as to the value of the property destroyed. Likewise, the company investigated and determined the value of the home which was located on the property. It is not in a position on those losses to claim that the Herrons took any advantage by reason of the failure to file an amended proof of loss. By proceeding to make a thorough investigation of the fire and the value of the building and the household furniture, the company waived any technical error in the proof of loss as filed. The record shows that such an investigation was actually made before the submission of the request for an amended proof of loss. Insurance Law & Practice, Appleman, Vol. 5, § 3554. Of course, this would not be true with reference to the bulk oil plant equipment, in that such equipment was either missing or had disappeared before a thorough investigation could be made. I feel that the appraiser for the company undervalued the home and that the home was worth in excess of $5,000. Likewise, I feel that the agent somewhat undervalued the property covered by the endorsement on the house insurance policy and that the value of that property was $500.

The sum of $750 is a reasonable attorney fee to be paid by the insurance company. I have recently held that interest should not be allowed on an unliquidated sum to be collected under an insurance policy. I adhere to that ruling under the facts in this case.

Upon payment of $5,500 into Court, a determination will be made of the interests of the respective parties in such fund.

This opinion shall stand as the findings of the Court on the issues of law and fact. A form of interlocutory judgment shall be presented.