No. 9.—Adm'r of SHEPHERD GREEN, deceased, plaintiff in error vs.
NEEDHAM BRYANT, defendant in error.

[1.] If A agrees to buy a plantation for B, and B agrees to pay A what he gives for it,
and A represents to B that he gave three thousand dollars for it, when in fact he paid
a less sum, and B pays him three thousand dollars, an action on the case will lie in
favour of B against A, for the deceitful and false representation.

Case for Deceit. Brought by defendant in error against the
plaintiff's intestate. From Lee Superior Court. Tried before
Judge WARREN, November Term, 1846.

For the facts of the case, see the opinion of the Supreme Court.

STURGIS for the plaintiff in error.

LYON for the defendant in error.

*By the Court*—NISBET, J. delivering the opinion.

The declaration in this case alleges, that the plaintiff and the de-
fendant were brothers-in-law; that the plaintiff, residing at the time
in the county of Burke, was desirous of removing to some of the
southwestern counties, and, in consideration that he would move
to the county of Lee, where the defendant resided, he, the defend-
ant, proposed to him that he would purchase a plantation there,
owned by a man named Andrews, for him, (the plaintiff,) and that
he should have the plantation at the price that the defendant might
be compelled to pay for it; that the plaintiff, in order to be near his
brother-in-law, and to have the comfort and satisfaction of his so-
ciety, and confiding in his good intentions, acceded to the proposi-
tion. That, some time after this understanding was entered into, the
defendant informed him that he had bought the plantation, and that
he and his brother had paid for it about the sum of three thousand
dollars; and that, confiding in the truth of this statement, he exe-
cuted to the defendant and his brother, his notes for some twenty-
seven hundred dollars, which he paid. That the representation of
defendant, that he had paid three thousand dollars for the land, was
false and fraudulent. That the defendant had paid for it only
some twenty-two hundred dollars, and that he knew that his state-
ments about the price paid for the land, were false; that they

were made to deceive and defraud the plaintiff, and that the plaintiff was damaged the sum of fifteen hundred dollars.   To this declaration the defendant demurred, upon the ground, that the plaintiff's writ contained no cause of action ;  in other words, that the representations made by the defendant, would not sustain an action for deceit.

The Court overruled the demurrer, and *that* is assigned for error. Much discussion was had at bar upon the character of the contract or agreement entered into between these parties, as set forth in the declaration.   On one side it is claimed to be valid, and on the other void for want of consideration.   We do not find it necessary, in the view we take of this subject, to determine whether it be or not a *nude pact*.

It was argued by the defendant's counsel, with much [1.] earnestness and ability, that the defendant in the Court below, (Green,) was, in the case made by the writ, the voluntary agent of the plaintiff, to purchase the land of Andrews ;  and that as such, having entered upon the duties assumed, he was bound to execute them in good faith ;  and if by his misfeasance any injury should accrue to the plaintiff, he was bound to make it good to him.   We recognise this position, and cannot doubt but that it is good law. The state of the pleadings, however, forbids its application in this case, for this is an action on the' case, with one special count, to recover damages for deceit practiced by the defendant on the plaintiff.   We do not question but that an action for money had and received, would well lie upon the principles just now adverted to; but this is not that action.   We are to determine whether the action on the case for deceit, can be sustained upon the facts averred in the plaintiff's declaration; that is, whether the false and fraudulent representation, knowingly made by the defendant, touching the amount of money paid for the land, is a good foundation for this action ; we think it is.

The position assumed by the counsel for the defendant in this case, is better stated in the language of Grose, J. in the great case of *Pasley* vs. *Freeman*, reported in 3 *T. R.* 54, than any which I have at command.   In enumerating instances in which the action of deceit will not lie, Mr. Justice Grose, in the dissentient opinion which he gave in that case, says : " That if the assertion be a *nude* assertion, it is that sort of misrepresentation, the truth of which does not lie alone merely in the knowledge of the defendant, but may be inquired into, and the plaintiff is bound so to do, and he

cannot recover a damage which he has suffered by his laches." It is contended by counsel for the defendant, that the statement made by Green, that he and his brother gave three thousand dollars for the land, when in fact he gave only twenty-two hundred dollars, was a *nude assertion;* that this was a *mere misrepresentation,* the truth of which did not lie alone in his knowledge, and that plaintiff was bound to inquire into it; and failing to do so, if he has suffered damage, it was owing to his own laches, and therefore he cannot maintain this action. It is conceded that there is a class of lies, voluntary, aimless, yet weak and wicked lies, that do not give rise to an action. The learned judge, whose opinion is quoted above, proves this, in his able review of the authorities upon this subject. But these very cases go upon the principle that the fact stated is not *peculiarly* within the knowledge of the defendant, or that the defendant did or did not know the statement to be false, or that the plaintiff had equal opportunities of knowing its truth or falsity, with the defendant. What is meant by what is termed in the books *a nude assertion,* or a *naked lie?* Take the definition of an English judge, unsurpassed in the annals of his country's jurisprudence by any man living or dead, Mr. Justice Buller — "*I* (says this able jurist) *define a naked lie to be, saying a thing which is false, knowing or not knowing it to be so, and without any design to injure, cheat, or deceive a person.*" How does the misrepresentation in this case tally with this definition? Let us look into it. First, there is an agreement between the parties that the defendant should buy the land; this agreement had its origin in the ties of relationship and the trust of friendship. The plaintiff assumed to take the land at what the defendant might be compelled to pay for it; he was voluntarily the agent of the plaintiff to buy the land upon the best terms practicable for his benefit. And what does he do? Buys the land at twenty-two hundred dollars and represents to the plaintiff that he gave three thousand. The plaintiff, true to his part of the agreement, and still confiding in the defendant, executes his notes for twenty-seven hundred dollars, and at maturity pays them. The defendant knew better than the plaintiff what he gave for the land; the representation was wilfully false; it was made for his, the defendant's, benefit; he was interested in it; by it he pocketed some five hundred dollars of the plaintiff's money. Shall it be said that the truth of the statement might have been inquired into by the plaintiff, and if damnified it was the result of his own laches? The plaintiff had not the same or equal means of

Adm'r Green *vs.* Bryant.

knowing the truth with the defendant; he was the principal actor, the prime agent in the transaction. The lie, too, to use again the language of Buller, " was coupled with some dealing " between him and the plaintiff.  And whether the agreement be valid in law or not, it must be looked to as *a fact*, as part and parcel of the whole transaction, in determining the character of this lie. The plaintiff was thrown off his guard by this agreement; the defendant had pledged himself, voluntarily, to fair dealing. With what semblance of law or equity shall he now come into court and say to the plaintiff, I only told you *a naked lie*, and therefore you cannot maintain your action. So far from its being a *naked lie*, it was a lie coupled with an interest, and clothed with all the attributes of selfishness, deceit, and falsehood. In our judgment this case does not belong to that class of cases which constitutes the exception of Justice Grose.

But we will inquire further into the law of deceit, as applicable to this cause. In the early cases, it was held necessary that the party making the affirmation, should be a party to the contract, and that there should be a promise, express or implied, that the fact is true which is misrepresented. *See 3 T. R.* 52 *a* 65 and cases there cited. If this were now the rule, the defendant would be liable to the action; for his fraudulent representations grew out of a matter of agreement between himself and the plaintiff, touching the purchase of the land, and in my opinion amounted to a promise that the fact misrepresented was true. He had before undertaken that the representation should be true. Now, however, the action will lie for a false affirmation touching the credit of a third person, when the person affirming has no interest to misrepresent, by which another is injured. This position was taken and held by the Court in *Pasley* vs. *Freeman*, 3 *T. R.* 51. That case was brought to recover damages upon the false affirmation of the defendant, that one Falch was "safely to be trusted and given credit to." The action was sustained by Lord Kenyon, and Buller and Ashurst, Justices.—Grose J. dissenting. It is worthy of remark, that Mr. Justice Grose himself admits; that if there be *damnum cum injuria*, the action may be maintained; his dissent was put upon the ground that in that case there was fraud but no injury. The doctrine asserted in Pasley *vs.* Freeman, is now well settled both in England and America. *See* 1 *East,* 318; 2 *East,* 92; 3 *Ves. & Bea.* 110; 5 *Bos. & Pull.* 241; 1 *Days' R.* 22

7 *Cranch, R.* 92; 17 *Mass.* 182; 6 *Johns. R.* 181; 6 *Cowen,* 346; 2 *Wendell,* 385; 7 *Wendell,* 1.

The foundation of this action is fraud and deceit in the defendant, and damage to the plaintiff. Fraud without damage, or damage without fraud, gives no cause of action, but when these two concur an action lies. 3 *Bulst.* 95. And even if the party has no interest in his iniquity—if he profits nothing by his misrepresentation, he is still liable; for that only proves his malice to be the greater. Much more is he liable, if as in the case now being considered, he is interested in his iniquity, and realises a handsome profit upon his villainy. Here there is an union of fraud and damage—a false assertion, a knowledge of the falsity of the fact stated, and an interest in the results of the statement. The record shows all these things, and the demurrer admits the record to be true. And here we might rest our judgment; but there are yet some principles relevant to this case to which it may be well briefly to advert.

" The inference of fraud, (says Chancellor Kent) is easily and almost inevitably drawn, when there is a suppression or concealment of material circumstances, and one of the contracting parties is knowingly suffered to deal under a delusion. It was upon this ground that Lord Mansfield must have considered that selling an unsound article, knowing it to be unsound, for a sound price, was actionable. It is equivalent to the concealment of a latent defect, and the ground of action is the deceit practised upon the buyer. The same rule applies to the case where a party *pays money in ignorance of circumstances, with which the receiver is acquainted and does not disclose, and which if disclosed would have prevented the payment.* In that case the parties do not deal on equal terms, and the money is held to be unfairly obtained and may be recovered back." 2 *Kent,* 483; 1 *Brod. & Bingh.* 289; 9 *B. & Cress.* 577; 4 *Metcalf R.* 381; 1 *Story's Comm. on Eq. Jur. p.* 201; 25 *Wendell,* 399. The plaintiff in the case before us, was in ignorance of the real amount which the defendant paid for the land; this knowledge was of course in possession of the defendant, and not only not disclosed, but a representation made relative to the amount wholly inconsistent with the fact. If the plaintiff had known that the defendant paid only twenty-two hundred dollars for the land, he would not have paid him twenty-seven hundred. The parties did not deal on equal terms, and the case is within the principle asserted by Chancellor Kent.

So if there is confidence reposed in another, and he falsely affirm a fact by which the party trusting him is thrown off his guard, and inquires no further, this action will lie. In the case of *Lysney* vs. *Selby,* 2 *Ld. Raymond,* 1118, the defendant was sued for falsely and fraudulently representing to the plaintiff that certain houses of his were then demised at the yearly rent of £68, to which the plaintiff, giving credit, bought the houses for a large sum of money; whereas, in truth, the houses were then demised at the yearly rent of £52, and no more. Lord Holt, in this case, said, "if the vendor gives in a particular of the rents, and the vendee says he will trust him, and inquire no further, but rely upon his particular, then, if the particular be false, an action will lie."

By previous understanding, the plaintiff in the case before us, had consented to rely upon the particular of the defendant, as to the price to be paid for the land. He had already reposed confidence and agreed to trust him; his particular was falsely rendered. Is not the case analogous in principle to the case reported in Lord Raymond? Upon the authority of the case in Lord Raymond, Abbott, C. J. determined, in *Dobell* vs. *Stevens,* that "where the vendor of a public house made, pending the treaty, certain deceitful representations respecting the amount of business done in the house, and the rent reserved for a part of the premises, whereby the plaintiff was induced to give a larger sum for the premises," an action would lie for the deceitful representations; the Chief Justice, remarking, "here the plaintiff did rely upon the assertion of the defendant, and that was his inducement to the purchase. The representation was not of any matter or quality pertaining to the thing sold, but was altogether collateral to it." 3 *Barn. & Cres.* 612; 10 *Eng. C. L. R.* 201 *a* 202; 1 *Wheat. Selwyn,* 649; *Carth.* 90; *Salk.* 210.

I do not say that the law can take cognisance of every moral delinquency amongst men; that is wholly impracticable. There are many things left without remedy, except by an appeal in *foro conscientiæ* to the party. It cannot, however, have escaped the observation of the learned reader, that the courts of this country and England, have gradually raised the standard of legal propriety towards that of moral rectitude. With Pothier I admit that, "as a matter of conscience, any deviation from the most exact and scrupulous sincerity is repugnant to the good faith that ought to prevail in contracts, any dissimulation concerning the object of the contract, and what the opposite party has an interest

in knowing, is contrary to that good faith; for, since we are commanded to love our neighbour as. ourselves, we are not permitted to conceal from him any thing which we would be unwilling to have had concealed from ourselves under similar circumstances. But, in civil tribunals, a person cannot be allowed to complain of trifling deviations from good faith in the party with whom he has contracted. Nothing but what is plainly injurious to good faith, ought to be there considered as a fraud sufficient to impeach a contract." At the same time I cordially approve and commend the following epitome of legal morality, so far as concerns this subject, from the pen of our own profound and virtuous Story, remarking that the present action, whether judged by Pothier or Story, is plainly sustainable. "When the party intentionally, or by design, misrepresents a material fact, or produces a false impression, in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage of him, in every such case there is a positive fraud in the truest sense of the terms. There is an evil act, with an evil intent, *dolum malum ad circumveniendum.* And the misrepresentation may be as well by deeds or acts as by words; by artifices to mislead, as well as by positive assertions. Whether the party thus misrepresenting a fact knew it to be false, or made the assertion without knowing whether it were true or false, is wholly immaterial; for the affirmation of what one does not know or believe to be true, is equally, in morals and law, as unjustifiable as the affirmation of what is known to be positively false. And even if a party innocently misrepresents a fact by mistake, it is equally conclusive, for it operates as a surprise and imposition upon the other party."

So let the judgment of the Court below be affirmed.