[No. 9176.    Department One.    April 1, 1911.]

EDWARD D. KOHL et al., *Respondents*, v. MASTIN TAYLOR, *Appellant*.[1]

CORPORATIONS —STOCK—SALES —RESCISSION BY VENDEE—FRAUD. The false statement of the owner of corporate stock as to what it had actually cost him, for the purpose of inducing a sale, is a misrepresentation of a material fact, for which rescission and damages may be had, especially, where future business relations were to grow out of the sale.

Appeal from a judgment of the superior court for Jefferson county, Still, J., entered March 22, 1910, in favor of

[1] Reported in 114 Pac. 874.

the plaintiffs, after a trial before the court without a jury, in an action to cancel and set aside a note and mortgage. Affirmed.

*W. H. Abel*, for appellant.

*Bridges & Bruener*, for respondents.

PARKER, J.—The plaintiffs commenced this action to procure a decree cancelling a certain note, and mortgage securing payment thereof, executed and delivered by them to the defendant on July 23, 1909, for $3,500, or in the alternative, a judgment against the defendant for damages in the event the note is transferred to an innocent holder so that its cancellation cannot be had. Such relief is sought by the plaintiffs upon the ground of alleged fraudulent and false representations made by the defendant to the plaintiffs inducing them to execute the note and mortgage. Judgment was rendered against the defendant and in favor of the plaintiffs for $3,500 damages. The defendant has appealed.

Early in the summer of 1909, agents of the Chicago Cabinet Company visited the Grays Harbor country for the purpose of selling territorial rights for the sale of the Success Kitchen Cabinet. About July 1st of that year, appellant and three other residents of Hoquiam associated themselves together, each contributing the sum of $3,500 towards a fund of $14,000, for the purpose of purchasing territorial rights for the sale of the Success Kitchen Cabinet, and engaging in the business of the sale thereof. To that end they organized a corporation by the name of The California Cabinet Company, with a stated capital stock of $50,000, divided into 500 shares of the par value of $100 each. The appellant and his associates were each to become the owner of one-fourth of the stock. They purchased the right to sell Success Kitchen Cabinets in the state of California for the sum of $12,000. This right, and the $2,000 remaining of the $14,000, became the property of the California Cab-

inet Company, and its only resources. It was understood
that the several stock subscriptions of appellant and his asso-
ciates were to be considered as paid for in full by this trans-
action. Thus appellant became the owner of 125 shares of
the stock of the par value of $12,500, at a cost of $3,500.
A few days thereafter appellant induced the respondents to
purchase from him one-half of his stock, being 62½ shares,
for $3,500. In payment thereof respondents executed and
delivered to appellant their negotiable promissory note for
$3,500, and a mortgage upon land owned by them in Jeffer-
son county to secure the same. A few days thereafter ap-
pellant transferred the note to an innocent holder for value
before maturity, which transfer prevented its cancellation.
This accounts for the form of judgment rendered by the trial
court.

The representation made by the appellant to the respond-
ents inducing them to purchase the stock and give him the
note and mortgage in payment thereof is the principal fact
determining this controversy. The facts are not established
by evidence which is free from conflict, but we think the evi-
dence was such as to warrant the court in believing the fol-
lowing: While both respondents executed the note and
mortgage, the negotiations for the sale of the stock were made
by appellant principally with Mrs. Kohl. Her husband is
in ill health and she seems to be the business manager for
the family. She and appellant had been acquainted for about
six years, and on friendly terms during that period. She
and her husband were running a hotel at Aberdeen on July 3,
1909. During the afternoon of that day appellant called on
Mrs. Kohl and submitted to her the proposition of selling her
one-half of his stock in the California Cabinet Company for
$3,500. He then explained to her the purpose of the organ-
ization of the company, and represented to her its prospec-
tive profits in such manner as to induce her to believe that
they would be very large. He also represented to her that
if she would become a stockholder in the corporation he would

procure employment for her by the company at a salary of $100 per month. It appears that the by-laws of the company provided that all of the original stockholders should be employed by the company at a salary of $100 per month, and that each of such stockholders could employ a competent person to take his place. Appellant told her that he had more stock than he could handle and wanted her to take part of it off his hands and represent him in the corporation. She would not then decide the matter, but told him she would talk to Mr. Kohl when he came home towards evening, Mr. Kohl then being absent from the hotel. Appellant finally asked her to call him up by 'phone in the evening and let him know if she would take the stock. This she did not do, but he called her up and again urged her to take the stock. This conversation over the 'phone resulted in his coming to the hotel later that evening and talking to both Mr. and Mrs. Kohl. Mr. Kohl testified that at this conversation appellant said: "That he would let us have it (stock) for actually the same as he had got it for, what it cost him, he said that he would not be making a cent." Mrs. Kohl testified that appellant said, among other things, at this conversation, "That he was not making one cent on it. That he was just letting me in so that I could manage his part of it."

We think the trial court was warranted in believing that appellant made statements relative to the cost of the stock to him in substance as respondents testified, although he himself denies making such statements. The deal was then completed by respondents executing the note and mortgage, when appellant gave to them a written memorandum which he signed, agreeing to have issued to them the 62½ shares of stock. The stock was not then formally issued by the company, it being claimed that the delay was caused by the fact that the corporation had not yet procured a seal. It is clear that this representation made by appellant, as to letting respondents have the stock at the same price it had cost him, was false, and also that it was one of the prin-

cipal inducements leading them to purchase the stock and execute the note and mortgage in payment thereof. Before any certificate for the 62½ shares of stock had actually been issued and tendered to respondents, they repudiated the purchase thereof, upon the ground that they were induced by the false representations of appellant to purchase the same, and thereafter refused to accept the stock. During all this time appellant was the president of the corporation.

Learned counsel for appellant contends that any false statements made by appellant to respondents as to the cost of the stock to him, as an inducement to them to purchase it at the price offered, would not form a legal basis for the relief sought by the respondents. It may be conceded that there are authorities supporting this contention, where the parties are dealing at arm's length and there is nothing involved but a mere sale of property, with no thought of future business relations between the parties in connection with the property which may be the subject of sale; though even in such cases there is eminent authority to the contrary.

In the case of *Fairchild v. McMahon*, 139 N. Y. 290, 34 N. E. 779, 36 Am. St. 701, the court of appeals had under consideration a false statement made by the owner of real property as to the amount it had recently cost him, to the owner of other property, for the purpose of inducing an exchange of the properties, which statement did induce the exchange. Such statement was there held to be a statement of a material fact, and a sufficient basis upon which to predicate a finding of fraud. At page 294, quoting with approval from *Sandford v. Handy*, 23 Wend. 260, the court said, relative to such a statement, "It is a material fact, which not only tends to enhance the value, but gives to it a firmness and effect beyond the force of mere opinion." *Thompson v. Koewing* (N. J.), 76 Atl. 752; *Mason v. Thornton*, 74 Ark. 46, 84 S. W. 1048; *Grinnell v. Hill*, 1 Cal. App. 492, 82 Pac. 445; *Kimber v. Young*, 137 Fed. 744; *Hughes v. Lockington*, 221 Ill. 571, 77 N. E. 1105. In this case the

contemplated future business relations of the parties to grow out of the stock sale seem to furnish additional reasons in support of respondents' contentions. *Teachout v. Van Hoesen,* 76 Iowa 113, 40 N. W. 96, 14 Am. St. 206; *Johnson v. Gavitt,* 114 Iowa 183, 86 N. W. 256; *Kilgore v. Bruce,* 166 Mass. 136, 44 N. E. 108; *Strickland v. Graybill,* 97 Va. 602, 34 S. E. 475. We are constrained to adopt the holding of these authorities. It seems clear to us that a false statement of the price the vendor paid for property a short time before he sells it to his vendee, under such circumstances as are disclosed by this record, is a false statement of a material existing fact, and is sufficient to support the contentions of the respondents made in this case.

There were other alleged false representations made by appellant to respondents which, when critically examined, would probably lend additional support to respondents' contentions in this case, but we do not find it necessary to analyze them, since we are of the opinion that those we have noticed are sufficient to support the judgment of the trial court. We are of the opinion that that judgment should be affirmed. It is so ordered.

DUNBAR, C. J., MOUNT, FULLERTON, and GOSE, JJ., concur.