## Voorhees v. Cragun.

[No. 8,977. Filed May 10, 1916.]

1. Fraud.—*Deceit.—Nonessential Representations.*—In an action for fraud on plaintiff in the sale to him of certain corporate stock, where the complaint proceeded on the theory that representations by defendant as to the undesirability of retaining in the company the man whose stock was purchased were made for the purpose only of getting plaintiff in a frame of mind to consider the purchase of such stock, thus rendering easier of accomplishment defendant's sale to plaintiff of such stock at par after he, the defendant, had arranged for its purchase from the owner at much less than par, the fact that the representations as to the owner of such stock were true was of no avail to defendant, since the falsity thereof was not essential to plaintiff's cause of action. p. 696.

2. Fraud.—*False Representations.—Basis of Action.*—Representations relied upon as the basis of an action for fraud must relate to a material existing fact, and mere opinions as to value, or representations or promises as to what one can or will do in the future will not furnish the basis for such an action. p. 696.

3. Fraud.—*Misrepresenting Price of Corporate Stock.*—Where defendant by falsely representing that in purchasing eighty-one shares of corporate stock he had to pay $100 a share, when in fact he had arranged for its purchase for $6,000, by reason of which representation plaintiff paid defendant $8,000 for eighty shares, defendant was liable to plaintiff for the difference, since a person who arranges to sell to another property at cost price to him, and by false representations as to such price induces the purchaser to

pay an excess, is liable to the purchaser for the difference even though the property may be worth the amount paid by the latter. p. 697.

4. FRAUD.—*Misrepresentations.*—*Damages.*—Where false statements as to cost of property, made in representing its value, are such as to constitute actionable fraud, the measure of damages is the difference· between the actual value and the value as represented; but where property is sold at what is represented to be its cost to the seller, so that the cost price is a material part of the agreement, any sum paid above such cost price would be the measure of damages. p. 699.

5. FRAUD.—*Misrepresentations.*—*Failure to Investigate.*—Where defendant, in inducing plaintiff to purchase stock held by the superintendent of a corporation in which they were each interested, told plaintiff that only he, the defendant, could negotiate the purchase, that it would not do to let such superintendent know that any one other than defendant was interested in such purchase, which defendant represented would be made at par, etc., when as a matter of fact defendant had already arranged for its purchase below par, the contention by defendant, in an action against him by plaintiff to recover for the fraud, that plaintiff should have investigated before buying and paying for the stock, was unavailable. p. 700.

6. FRAUD.—*Defenses.*—*Laches.*—While the right to prosecute an action may be barred if plaintiff has been guilty of such laches in bringing same as to work an equitable estoppel, where the action is one at law to recover damages for fraud, and the situation of the parties has not changed, and the interest of no third party has intervened, a defense of laches founded on mere delay can not prevail. p. 701.

7. TRIAL.—*Depositions.*—*Motion to Suppress.*—Where the notice for the taking of a deposition is defective, and the defect appears upon its face, objection should be taken by a motion to suppress the deposition before entering on the trial. p. 702.

8. DEPOSITIONS.—*Defective Notice.*—*Waiver.*—A party by attending the taking of a deposition and cross-examining the witness waives a defect in the notice. p. 702.

9. APPEAL.—*Review.*—*Harmless Error.*—*Admission of Evidence.*— Error, if any, in admitting in evidence certain telegrams in support of· a motion to strike out an affidavit denying notice of the taking of a certain deposition offered in evidence, was cured by the overruling of such motion. p. 702.

10. FRAUD.—*Pleading.*—*Amendment.*—In an action for fraud in the sale of certain corporate stock, there was no error in permitting plaintiff, at the conclusion of the evidence, to amend the complaint to show that the purchase was in writing, since the complaint was based on tort and its sufficiency was not affected by the amendment. p. 703.

11. PLEADING.—*Complaint.*—*Waiver of Defects.*—The sufficiency of a complaint is waived by failing to demur thereto. p. 703.

12. PLEADING.—*Proof.*—*Variance.*—Where the averments of the complaint in an action for fraud in the sale of certain corporate stock were such that evidence of either a written or verbal sale was admissible, there was no variance upon proof that the transaction was in writing. p. 703.

From White Circuit Court; *James P. Wason,* Judge.

Action by Strange N. Cragun against Richard D. Voorhees. From a judgment for plaintiff, the defendant appeals. *Affirmed*

*Charles R. Pollard* and *Sills & Sills,* for appellant. *E. B. Sellers* and *S. R. Artman,* for appellee.

HOTTEL, J.—For convenience and brevity appellee and appellant will be referred to herein as A and B, respectively. This is an appeal from a judgment in A's favor for $2,477.20 and interest from September 22, 1913, in a suit brought by him against B to recover damages alleged to have resulted from the fraud of B in connection with a sale made by him to A of 80 shares of stock in the "Dairy Cream Separator Company". The complaint is in one paragraph and the averments thereof, necessary to an intelligent disposition of the questions presented by the appeal are substantially as follows: On July 18, 1907, the "Dairy Queen Manufacturing Company", a corporation, was engaged in the manufacture and sale of cream separators at the town of Flora, Indiana. On said day a new corporation, designated "The Dairy Cream Separator Company" was organized with a capital stock of $65,000, divided into 650 shares of $100 each. This latter corporation was organized for the purpose of taking over the former and enlarging it and relocating it at Lebanon, Indiana. B and one

Edward F. Hedderich, hereinafter referred to as H, were stockholders in the former company, resided in said town of Flora and took stock in the new company, B taking 122 shares and H, 81 shares. A took 75 shares in the new corporation and A and B were elected directors thereof. A was chosen president and B vice president and continued to hold such offices for more than three years. H was selected as superintendent of the factory of the new corporation. About the time of the organization of the new corporation, B learned that H's 81 shares of stock could be purchased for $6,000, and he thereupon conceived the intention of cheating and defrauding A and to such end approached and represented to A that the business of the new company would not, and could not, succeed with H as superintendent of the factory; that he, B, personally knew H and knew him to be visionary and impracticable; that his holding the position of superintendent was a menace to the success of the business of the corporation; that such representations were made by B for the purpose of arousing the interest of A and with the intent of putting him in a frame of mind to purchase additional stock in such corporation; that B cautioned A to treat said information as confidential and not to disclose it to the other directors of such corporation; that B further represented to A that in order to get rid of H and prevent him from becoming superintendent of their factory it was advisable to purchase his stock, and then well knowing that he could purchase such stock for $6,000, falsely and fraudulently represented to A that it could be purchased at par, viz., $8,100 and no less, and that he alone could purchase it for such sum, and proposed to A that he, A, authorize him, B, to purchase such stock at

and for such price; that relying on B's representations as true, A promised to take such matter under consideration and advisement; that soon thereafter B still intending to cheat and swindle A, further represented to him that he had a conference with H and had arranged to purchase his 81 shares of stock at $100 a share, and again represented to A that it was highly important to purchase such stock and eliminate H as a stockholder, and as said superintendent; that it was impossible for such corporation to succeed with H as superintendent because of his impracticable and visionary character; that at the time of making these latter representations B *had then arranged with H to purchase his said stock for $6,000,* and with the intent to wrong and defraud A concealed such fact from him; and *falsely represented that he had arranged to purchase such stock at and for $100 per share and no less;* that he alone could purchase the stock at that price; that H did not know that he, B, was acting in behalf of anyone else in making such purchase, but believed that he was purchasing such stock for himself, personally, and that he, B, did not want H to know that the purchase of such stock was for anyone else; that if B became aware that A was trying to purchase such stock for someone else the purchase could not be effected; that he, B, could not make such purchase unless he, A, would purchase 81 shares of stock from him, B, and that if A would purchase his stock he would sell it to him at the same price for which he was buying it from H, viz., $100 a share; that A greatly desired the success of such new corporation and did not know that any of said representations made by B were false but believed all of said representations, both as to the necessity for eliminating H as a stockholder of such new corporation and as the superin-

tendent of its factory in order to make the business of such corporation a success, and said representations as to B's arrangement for the purchase of the stock of H and the arrangement as to the price to be paid therefor, and believed that all of such representations were made by B with a good intent and an honest purpose and with a view to the success of such new corporation; that so relying on such representation and on account of his reliance thereon, A on October 18, 1907, in good faith, by a written contract executed by himself and B, purchased of B 80 shares of B's stock at and for the price of $8,000; that if he, A, had known that B had arranged to purchase from H his 81 shares at $6,000, he would not have purchased B's stock at $100 a share; that each and all of the representations made by B were false and were known by him to be false when made, and were made for the purpose of defrauding A out of the sum of $2,000 and for no other purpose, etc.

The errors assigned and relied on for reversal are: (1) the overruling of appellant's motion for a new trial; (2) the overruling of his motion that the submission of the cause be set aside and that he be granted leave to file a demurrer to the complaint as amended. The motion for new trial contains numerous grounds, many of which are waived and will not be considered there being no reference to them in B's brief. B first insists that the representations on which A relies as furnishing the basis for his recovery, as disclosed by the complaint and the evidence, relate to the price which B *was to pay* for H's stock and not representations of any material *existing* fact or facts, and hence that such representations, though false, are not actionable.

The sufficiency of the complaint was not challenged below and hence our consideration of the

questions suggested must be from the standpoint of the evidence. However, there was evidence supporting or tending to support each of the essential averments of the complaint above indicated, and hence such averments, for the purposes of the question suggested, may be treated as statements of the facts disclosed by the evidence. It should be stated, however, in this connection that B insists that the evidence shows without contradiction that H was theoretical and impractical and that B's representations in this respect were true. Assuming that this is correct, it is not of controlling influence. The complaint proceeds on the theory that the representations in such respect were made for the purpose only of getting A in a frame of mind to consider the purchase of H's stock and this being true, B's desires and purposes in the matter of the real fraud intended to be perpetrated, viz., the sale to A of H's stock, would have been rendered easier of accomplishment if in fact A knew and recognized the truth of B's said representations as to H. The falsity of such representations therefore, though alleged in the complaint, was not essential to A's cause of action, and hence proof thereof was not necessary

Going back to the question or legal proposition, above indicated as the one for which B contends, it may be conceded that, generally speaking, 2. representations in order to furnish the basis of an action for fraud on account thereof must relate to a material existing fact, and that mere opinions as to value or representations or promises as to what one can or will do in the future will not furnish the basis for such an action. *Culley* v. *Jones* (1905), 164 Ind. 168, 171, 174, 73 N. E. 94, and cases cited; *Smith* v. *Parker* (1897), 148

Ind. 127, 133, 45 N. E. 770; *Judy* v. *Jester* (1913), 53 Ind. App. 74, 86, 100 N. E. 15; *Merchants Nat. Bank* v. *Nees* (1916), 62 Ind. App. —, 110 N. E. 73, 112 N. E. 904; *Neidefer* v. *Chastain* (1880), 71 Ind. 363, 36 Am. Rep. 198; *Cooper* v. *Schlesinger* (1884), 111 U. S. 148, 153, 4 Sup. Ct. 360, 28 L. Ed. 382, 384. B makes his mistake in assuming that A's right to recover under the issues and the evidence is based on the misrepresentation of what he, B, could purchase H's stock for. It seems clear to us that the averments of the complaint indicated, *supra*, show an entirely different theory, viz., that the action is founded on the false representations made by B in the purchase of such stock, as to the actual existing agreement and understanding he, B, had with H as to the price which he was to pay for such stock. In support of such averments and theory, there was evidence tending to show that B after convincing A that the success of their new corporation depended on getting rid of H as superintendent, then suggested that this could be done by purchasing H's stock, and in response to the suggestion of A that the purchase be taken up with the board of directors of the corporation, B represented that the purchase must be made secretly; that he believed he could purchase the stock from H at par but for no less; that A then suggested to B that he, B, purchase the stock, to which B replied that he could not do so because he was not financially able, but that he was the only person who could negotiate the purchase; that A then requested B to take the matter up with H and ascertain whether his stock could be purchased and if so upon what terms and to report the result of his negotiations to A; that a few days later B reported to A that he *had seen* H (not that he would see him) and *had discussed* with him the

purchase of his stock; that he *"had ascertained"* from H that his stock could be bought at par and no less; that he *"had arranged"* (not that he would arrange) for the purchase of H's stock at par. Upon these representations A told B to have the stock transferred to him, A, and he, A, would pay for it. B then suggested in effect that it would not do to have H transfer the stock directly to A; that the deal could not be effected in that way; that H must not know that anyone had anything to do with the purchase, other than B; that if H knew anyone else was interested he would refuse to sell; that in order to consummate the deal he, B, would transfer 80 shares of his own stock to A at the price he had arranged to pay H and would then have H transfer his stock directly to him, B. Upon these representations and with such understanding A entered into a contract with B under which A purchased and paid to B the sum of $8,000 for 80 shares of said stock. In other words, the trial court was warranted in finding, under the averments of the complaint and the evidence offered in support thereof, that the purchase of stock, here involved, was in effect a purchase by A from H; that in making such purchase A made B his representative and agent in the negotiations and consummation thereof, and that B falsely and fraudulently represented to A that in purchasing such stock he had to pay H $100 a share therefor, when in fact he arranged to purchase the 81 shares for $6,000. It follows that the case is not controlled by the cases relied on by appellant and those cited, *supra*, but is controlled by that class of cases which announce the following doctrine: A person who agrees to sell to another property at cost price to him and, by false representations as to such cost price, induces the purchaser to pay a

price in excess of such cost price is liable to the purchaser for the difference between the actual cost price and the amount paid, even though the property may be worth the amount paid, or more. In such a case the purchaser is entitled to "all the profits of his purchase and contract as he made it, and it is no answer to his action to say, that though the representation was false, yet the actual *value* of the thing sold is equal to what such false representation induced him to pay for it." *Pendergast* v. *Reed* (1868), 29 Md. 398, 404, 96 Am. Dec. 539. See, also, *Bergeron* v. *Miles* (1894), 88 Wis. 397, 60 N. W. 783; *Teachout* v. *Van Hoesen* (1888), 76 Iowa 113, 40 N. W. 96, 1 L. R. A. 664, 14 Am. St. 206; *Johnson* v. *Gavitt* (1901), 114 Iowa 183, 86 N. W. 256; *Grinnell* v. *Hill* (1905), 1 Cal. App. 492, 82 Pac. 445; *Elerick* v. *Reid* (1895), 54 Kan. 579, 38 Pac. 814; *Blacks* v. *Catlett* (1823), 3 Littell (Ky.) 140; *Green* v. *Bryant* (1847), 2 Ga. 66; *Kilgore* v. *Bruce* (1896), 166 Mass. 136, 44 N. E. 108; *McFadden* v. *Robison* (1870), 35 Ind. 24; *Miller* v. *Buchanan* (1894), 10 Ind. App. 474, 37 N. E. 187, 38 N. E. 56; *Kohl* v. *Taylor* (1911), 62 Wash. 678, 114 Pac. 874, 35 L. R. A. (N. S.) 174, 182, note; *Warren* v. *Miller* (1904), 99 N. W. (Iowa) 127; *Hughes* v. *Lockington* (1906), 221 Ill. 571, 77 N. E. 1105; *McLain* v. *Parker* (1910), 229 Mo. 68, 129 S. W. 500.

B's second contention is, that the evidence fails to show that appellee was damaged because there is no evidence to show the difference between 4. the actual value of said stock and the value thereof if it had been as represented. It is the law that false statements as to the cost of property *made in representing its value may,* in certain instances, constitute actionable fraud and that *in such cases* the measure of damages is

that indicated by appellant. *Ohlwine* v. *Pfaffman* (1913), 52 Ind. App. 357, 100 N. E. 777; *New* v. *Jackson* (1912), 50 Ind. App. 120, 95 N. E. 328; *Grover* v. *Cavanagh* (1907), 40 Ind. App. 340, 82 N. E. 104; *Beck* v. *Goar* (1913), 180 Ind. 81, 100 N. E. 1; *Judy* v. *Jester, supra; Boltz* v. *O'Conner* (1910), 45 Ind. App. 178, 90 N. E. 496; *Hulett* v. *Kennedy* (1891), 4 Ind. App. 33, 30 N. E. 310. But the case at bar, for the reasons already indicated, does not fall within this line of cases but is controlled by the principle first announced and the cases there cited. In the instant case the agreement between B and A was to the effect that A should pay for the stock in question the price paid to H for such stock, and hence the cost price was made a material and essential part of the agreement and any sum paid above that amount on account of B's misrepresentation of such cost price would be the measure of A's damage resulting from such misrepresentations. *Bergeron* v. *Miles, supra; Johnson* v. *Gavitt, supra; Pendergast* v. *Reed, supra; Kilgore* v. *Bruce, supra; Blacks* v. *Catlett, supra.*

It is next insisted by B that A had no right to rely on his representations, but that A should have investigated for himself before buying and paying for said stock. This contention is answered by the averments of the complaint and the evidence in support thereof, to the effect that B told A that he alone could negotiate the purchase of H's stock; that it would not do to let H know that anyone else was interested in such purchase, and the further averments of the complaint showing the mutual interest of A and B in the success of the corporation in which they each were stockholders, directors and officers, and that with the view of furthering the interests and in-

suring the success of such corporation A trusted B
to represent him and negotiate and consummate
such purchase. *Kohl* v. *Taylor, supra; Dorr* v. *Cory*
(1899), 108 Iowa 725, 732, 733, 78 N. W. 682;
*Teachout* v. *Van Hoesen, supra; Culley* v. *Jones*
(1905), 164 Ind. 168, 171, 73 N. E. 94, and cases
above cited, affirming the proposition that "a con-
tracting party may rely on the express statement
of an existing fact, the truth of which is unknown
to him, but which is asserted by the other con-
tracting party, as a basis for an agreement."

It is contended that A's delay in filing his suit
is such laches as should bar him from recovering.
This contention can not be upheld. While
6. there may be cases where the laches of a
party may be of such "character, and under
such circumstances, as will bar his right to prosecute
his action, in less time than that fixed by the statute
of limitations, this is so only in cases where the
laches are of such a character and under such cir-
cumstances as to work an equitable estoppel."
*Sherer* v. *Ingerman* (1887), 110 Ind. 428, 433, 11
N. E. 8, 12 N. E. 304, and cases cited. Where,
as in this case, the action is one at law to recover
damages for fraud, and the situation of the parties
has not changed, and the interest of no innocent
third party has intervened, a defense of laches
founded upon mere delay can not avail, but the
action may be prosecuted at any time within the
period prescribed by the statute of limitations.
*Koons* v. *Blanton* (1892), 129 Ind. 383, 387, 389,
27 N. E. 334; *Citizens Nat. Bank* v. *Judy* (1896),
146 Ind. 322, 43 N. E. 259; 2 Pomeroy, Eq. Jurisp.
§ 817.

B also complains of the action of the trial court
in permitting the deposition of Benjamin E. Gregory

to be introduced in evidence on the ground 7. that the notice for the taking thereof was defective. The defect suggested, being one which appeared on the face of the notice attached to the deposition, should have been presented to the trial court by a motion to suppress the deposition before entering on the trial of the case. No such motion was made. §455 Burns 1914, §439 R. S. 1881; *Pape* v. *Wright* (1889), 116 Ind. 502, 19 N. E. 459; *Cohen* v. *Reichman* (1913), 55 Ind. App. 164, 102 N. E. 284. B attended the taking of such deposition and cross-examined the witness. He thereby waived such defect in 8. the notice. *Prather* v. *Pritchard* (1866), 26 Ind. 65, 67; *Long* v. *Straus* (1890), 124 Ind. 84, 24 N. E. 664.

It is insisted that the court erred in admitting in evidence certain telegrams. Such telegrams were not admitted on the issues of the case, 9. but were offered, as stated in B's brief, in support of a motion by A to strike out certain affidavits made by B's attorneys to the effect that no notice had been served on them in connection with the taking of one of the depositions offered in evidence by A. The court overruled A's motion in support of which such telegrams were offered and admitted in evidence and hence cured, or prevented, any harm which might otherwise have resulted to B from the admission of such telegrams. The ruling on the motion in support of which the telegrams were offered was favorable to B and he has no exception thereto and hence no ground on which to predicate the error relied on. *Taylor* v. *Taylor* (1910), 174 Ind. 670, 683, 93 N. E. 9; *Guthiel* v. *Dow* (1912), 177 Ind. 149, 151, 97 N. E. 426.

Upon the conclusion of the evidence the trial

court permitted A to amend his complaint to conform to the proof by inserting an averment to the effect that the purchase by him of the 80 shares of stock in question was in writing executed by the parties herein. Thereupon B filed a written motion asking that the submission of the case be set aside and that he be permitted to file a demurrer to the amended complaint. Such motion was overruled and an exception thereto saved by B. This ruling is assigned as error and urged as a ground for reversal. B in the first instance, waived all objections to the sufficiency of the complaint by filing his denial and proceeding to trial without demurring thereto. Acts 1911 p. 415, §§344, 348 Burns 1914. *Akron Milling Co.* v. *Leiter* (1914), 57 Ind. App. 394, 107 N. E. 99. The amendment permitted did not in any way affect the question of the sufficiency of the complaint. The complaint was based on tort and not on the contract to purchase the stock and hence it was not necessary that the averment therein in relation to such contract should state whether it was written or verbal. Under the averments of the complaint before the amendment either a verbal or a written contract was admissible and proper, and hence there was no variance between the proof and such averment, and such amendment was therefore entirely needless and harmless. *Lake Shore, etc., R. Co.* v. *Teeters* (1906), 166 Ind. 335, 341, 342, 77 N. E. 599, 5 L. R. A. (N. S.) 425; *Pittsburgh, etc., R. Co.* v. *Higgs* (1906), 165 Ind. 694, 702, 705, 76 N. E. 299, 4 L. R. A. (N. S.) 1081; *Siegmund* v. *Kellogg-Mackay-Cameron Co.* (1906), 38 Ind. App. 95, 98, 77 N. E. 1096; *Breach* v. *Huntsman* (1908), 42 Ind. App. 205, 210, 211, 85 N. E. 523.

Finding no reversible error in the record the judgment below is affirmed.

NOTE.—Reported in 112 N. E. 826. As to carelessness as bar to relief from fraud, see 32 Am. St. 384. As to misrepresentation by the vendor of price paid for property as actionable deceit, see 8 Ann. Cas. 1062.