

**FILED**

Aug 11 2023, 8:49 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Robert E. Duff
Indiana Consumer Law Group
Fishers, Indiana

ATTORNEY FOR APPELLEE

Ann C. Coriden
Ann Coriden Law, LLC
Columbus, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

L.T. Garrett,

*Appellant/Cross-Appellee-Plaintiff,*

v.

Nissan of Lafayette, LLC,

*Appellee/Cross-Appellant-Defendant.*

August 11, 2023

Court of Appeals Case No.
22A-CT-2583

Appeal from the
Bartholomew Circuit Court

The Honorable
Kelly S. Benjamin, Judge

Trial Court Cause No.
03C01-1911-CT-6787

**Opinion by Judge Foley**
Chief Judge Altice and Judge May concur.

**Foley, Judge.**

[1]     L.T. Garrett ("Garrett") bought a truck from Nissan of Lafayette, LLC ("the Dealership"). He alleges that the Dealership lied to him when it informed him that the truck had a replacement engine, and that the replacement engine was covered by a two-year warranty issued by the manufacturer. After the engine

failed, and the Dealership refused to replace it, Garrett filed a complaint in the Bartholomew Circuit Court asserting an array of claims: several types of fraud and a violation of the Indiana Deceptive Consumer Sales Act ("IDCSA"). The trial court granted summary judgment in favor of the Dealership.[1] Garrett appeals, and the Dealership filed a cross-appeal contending that the trial court erred when it declined to rule that a set of requests for admission should be deemed admitted. We reject the cross-appeal and agree with Garrett. The trial court is reversed, and the case is remanded for additional proceedings.

## Facts and Procedural History

[2] Garrett's accounting of the salient facts—drawn from his complaint and affidavit—is as follows:[2] in April of 2018 Garrett noticed a 2008 Ford F-250 truck for sale and contacted the Dealership to inquire. Over the phone, a salesperson indicated that the truck had a replacement engine, and that the engine was subject to a warranty issued by the engine manufacturer and good for two years. Garrett went to the Dealership the following day, and a representative repeated the promises about the warranty for the engine, though

---

[1] Though all four counts of the complaint were targeted by the motion, and the trial court ultimately dismissed them all, the motion was styled as seeking "partial" summary judgment. Appellant's App. Vol. II p. 70. The Dealership maintains that it believes the question of whether it might recover attorney's fees from Garrett is a live question, though it is not a question before us today. We omit the word "partial" from our subsequent discussion.

[2] We resolve any doubts about facts in favor of the non-moving party when we review a summary judgment. *See, e.g., Burton v. Benner*, 140 N.E.3d 848, 851 (Ind. 2020).

the representative knew those claims to be false.[3] The warranty had, in fact, expired.

[3] Garrett was provided with an invoice demonstrating that the engine had been replaced, as well as a pamphlet which the Dealership representative informed Garrett was a copy of the warranty. In fact, the pamphlet was "a blank warranty brochure" which had not been completed and did not indicate that the engine was under warranty. Appellant's App. Vol. II pp. 17–18. Garrett bought the truck. Garrett relied upon the representations made by the Dealership and later averred that the "engine warranty was important" to him and also a "major selling point for" the truck. *Id*. at 153. Approximately fourteen months later, the truck suffered what the record describes only as "catastrophic engine failure." *Id*. at 21.[4] Garrett sought an engine repair via the manufacturer's warranty but learned that there was no warranty. He asked the Dealership to pay for the repairs; it refused.

[4] On November 28, 2019,[5] Garrett filed his complaint. It asserted four counts: (1) fraud via material misrepresentation; (2) fraud via material omission; (3) constructive fraud; and (4) violation of the IDCSA. After a failed motion for judgment on the pleadings,[6] discovery commenced. The trial court issued a

---

[3] The Dealership denies that any such representations were made.

[4] There do not appear to be any further details available.

[5] The complaint was amended on March 19, 2020, and we describe it herein with reference to its final form.

[6] The gravamen of this motion was that the purchase agreement contained a disclaimer of all warranties.

scheduling order on April 9, 2021, which set the deadline for all discovery as November 7, 2021: a Sunday. On October 8, 2021, precisely thirty days before the discovery deadline, the Dealership served discovery requests, including requests for admission ("RFA") on Garrett. The Dealership asked Garrett to admit: (1) that it made no representations regarding the truck having a warranty;[7] (2) that it was unreasonable for Garrett to believe that there was such a warranty; (3) that Garrett was offered the option to purchase a warranty; (4) that he declined that offer; and (5) that the written purchase agreement represented the complete terms of the sale.

[5]     Garrett's counsel sent an email to the Dealership's counsel on the day the discovery requests were served. The email read in pertinent part:

> Also, the written discovery you served today is untimely because it is due after the discovery completion date. I haven't decided how Plaintiff[8] intends to respond to it—Plaintiff might be willing to agree to respond if Defendant[9] agrees to respond to additional written discovery from Defendant—but Plaintiff reserves the right to object to it on the basis it is not timely.

Appellant's App. Vol. II p. 114. The email did not indicate why Garrett's counsel believed the requests to be untimely despite the fact that he had thirty

---

[7] Below, Garrett was careful to draw the distinction between a warranty applying to the truck and a separate warranty applying only to the engine. Appellant's Br. p. 6.

[8] Garrett was the plaintiff below.

[9] The Dealership was the defendant below.

days within which to respond, and the final day was precisely the deadline imposed for discovery exchange by the trial court.

[6] The Dealership's response came three days later via email from its counsel: "The parties do not share in the opinion as to whether the written discovery was timely served by Defendant. If your client does not intend to respond to it, we should probably discuss how best to address that issue." *Id*. at 115. Garrett never responded to the discovery requests. At a telephonic conference on November 22, 2021, attorneys for both parties apparently discussed the discovery requests but reached no resolution.

[7] Then, approximately eight months later, on June 8, 2022, the Dealership filed its motion for summary judgment,[10] designating the pleadings and a copy of the RFA. The motion relied significantly upon the RFA, with the Dealership treating the requests as being deemed admitted by operation of rule. In response, Garrett filed a "Verified Motion to Declare Requests for Admission Untimely, Answered[,] or, in the Alternative, to Withdraw the Admissions." *Id*. at 112.

[8] The trial court ruled that the email sent by Garrett's counsel on the date of service of the discovery requests constituted a timely objection, and, therefore, the RFA were not deemed admitted. Four days later, on August 15, 2022, the trial court held a hearing on the motion for summary judgment. The trial court

---

[10] Relying on the admissions, the motion sought judgment on the three fraud counts.

granted summary judgment to the Dealership on all of Garrett's claims. Crucial to its decision were the following findings:

8. In regard to the fraud claims, it is not reasonable that Garrett relied solely on a statement made by Lidester[11] to him regarding a Jasper[12] warranty. Garrett was also given documentation on April 5 regarding both when the Jasper long block engine was put in the F-250 (February 2, 2017), and an "unfilled out" document regarding a Jasper Limited Nationwide Transferable Warranty. Garrett purchased the F-250 on April 6 and had at least one full day to review those documents, which are not lengthy. There is no indication within the Jasper Warranty document that identifies an F-250 with a Jasper long block engine will be covered by a two-year unlimited mileage warranty. In addition, at a minimum under the "Important Product, Warranty Information," the "mileage at which installed" (pertaining to the engine) is blank as is the stock and production numbers. There is nothing in writing to indicate that the F-250 was covered under any warranty. There is nothing in the designated evidence in this case to suggest the engine was actually covered by a warranty. There was nothing written in the Jasper Warranty document to induce someone to believe that an actual engine was covered. It's a blank document. It's unclear whether Garrett even read the document before purchasing the F-250, but he did have a full day to review it and inquire about it, if he had so chosen.

9. "The person relying on the representations is bound to use ordinary care and diligence to guard against fraud; however, the requirement of reasonable prudence in business transactions is not carried to the extent that the law will ignore an intentional fraud practiced on the unwary. A person has a *right to rely upon*

[11] "Lidester" refers to the Dealership employee who sold Garrett the truck.

[12] "Jasper" refers to the engine manufacturer.

*representations where the exercise of reasonable prudence does not dictate otherwise.  Plymale v Upright*, 419 N.E.2d 756, 762–63 (Ind. Ct. App. 1981) [ ] [()citing [ ]*Voorhees v. Cragun* (1916), 61 Ind. App. 690, 112 N.E. 826. [ ] ([e]mphasis added [ ])[.]  Garrett did not exercise reasonable prudence in this situation.

10. Looking to the Deceptive Consumer Sale Act claim, Defendant disclaimed any and all warranties in the purchase agreement, told Garrett that the engine on the ten-year-old F-250 had been rebuilt, gave Garrett documentation regarding the rebuilt engine, and included a blank warranty brochure. Assuming Lidester informed Garrett that there was a two-year unlimited Jasper warranty from date of sale, there's no designation of evidence to show the statement was made as part of a scheme or to defraud or mislead.  Lidester also gave Garrett all the information he had regarding the engine and Jasper warranty information, with nothing to show that the F-250 engine was actually covered by a Jasper warranty.  It was not reasonable for Garrett to rely on Lidester's representations about the Jasper third-party warranty as a matter of law.

11. With all the information given to Garrett before he purchased the F-250, and his ability to review the information prior to the purchase, there was no reliance by Garrett, on a material misrepresentation or scheme of intent to defraud or mislead.

*Id*. at 17–18.  The parties now appeal.

## Discussion and Decision

### *A. Cross-Appeal - Requests for Admission*

We address the dealership's cross-appeal first.  The Dealership seeks to reverse the trial court's order regarding the RFA, thereby reintroducing as factors the

admissions of material elements adverse to Garrett's claims. "A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(B) set forth in the request, including the genuineness of any documents described in the request." Ind. Trial Rule 36. Failure to respond to requests for admission can have a severe consequence. "The matter is admitted unless, within a period designated in the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney." T.R. 36(A).

[10] "Matters admitted are deemed conclusively established, unless the trial court permits withdrawal or amendment of the admission." *Harkins v. Westmeyer*, 116 N.E.3d 461, 472–73 (Ind. Ct. App. 2018) (citing T.R. 36(B); *Gen. Motors Corp., Chevrolet Motor Div. v. Aetna Cas. & Sur. Co.*, 573 N.E.2d 885, 888–89 (Ind. 1991)). "When a party fails to timely answer requests for admission and the result of such failure is the admission of all facts material to the lawsuit, nothing remains to litigate, and the requesting party is entitled to summary judgment." *Id.* (citing *Bryant v. Cnty. Council of Lake Cnty.*, 720 N.E.2d 1, 6 (Ind. Ct. App. 1999), *trans. denied*).

[11] Because the penalty for a failure to respond to RFA is so severe, and because every trial lawyer knows, or certainly should, of the risk of that penalty, Garrett here should have availed himself of one of several options. He should have arrived at a consensus with respect to the timeliness of the requests. If no

consensus could be reached, he should have sought a ruling from the trial court. In any event, he had nothing to lose by simply drawing up denials of the RFA and serving them on the Dealership—thereby ensuring that his client's interests were protected—regardless of whether he believed he was under an obligation to do so. Garrett's counsel admits as much:

> Of course, the prudent thing to have done was to submit either a formal objection or to answer the requests for admission within thirty days. Counsel for Plaintiff was going through a personal crisis, not of his own making, at the time the response was due that drastically limited his ability to work and attend to professional duties and he unfortunately did not do so.

Appellant's App. Vol. II p. 117.

[12] Nevertheless, we are reluctant to intrude upon the trial court's discretion, especially as it pertains to discovery disputes. Such disputes are, unfortunately, common. Our rules convey a preference that they be resolved informally, or at least, that attempts to do so must be made before involving the trial court. T.R. 26(F). If the trial court does become involved, it enjoys "*broad* discretion with regard to rulings on discovery matters based upon its duties to promote discovery of the truth and to guide and control the proceedings." *State v. McKinney*, 82 N.E.3d 290, 294 (Ind. Ct. App. 2017) (citing *Miller v. State*, 825 N.E.2d 884, 888 (Ind. Ct. App. 2005), *trans. denied*) (emphasis added). "'Therefore, such rulings will be overturned only for an abuse of discretion. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court.'" *Id*.

[13]     "An important purpose of [Rule 36] is to more quickly and efficiently reach a resolution based on the actual facts[.]" *Costello v. Zavodnik*, 55 N.E.3d 348, 353 (Ind. Ct. App. 2016) (citing *St. Mary v. Superior Ct.*, 223 Cal. App. 4th 762, 783 (2014) ("The purpose of the RFA procedure is to expedite trials and to eliminate the need for proof when matters are not legitimately contested. The RFA device is not intended to provide a windfall to litigants. Nor is the RFA procedure a 'gotcha' device [.]")); *see also Fairland Recreational Club, Inc. v. Indianapolis Downs, LLC*, 818 N.E.2d 100, 101–02 (Ind. Ct. App. 2004) (citing *Georgetown Steel Corp. v. Chaffee*, 519 N.E.2d 574, 575–76 (Ind. Ct. App. 1988), *trans. denied*) ("Unlike other discovery techniques, the essential purpose of a request for admission is to obviate the need for time-consuming proof at trial by establishing undisputed facts, instead of attempting to 'discover' essentially unknown facts by deposition or interrogatory.")

[14]     Rule 36 is part of an overarching preference of our court system: when possible, to resolve cases on the merits. The rule seeks to streamline the process by allowing parties to essentially stipulate to matters which are not seriously in dispute: things like the authenticity of an exhibit.

[15]     But that is not what the Dealership's RFA were used for. It, rather, employed an increasingly frequent tactic entirely at odds with the spirit of the rule: "he sent them because he hoped [the opposing party] would not respond, rendering the matters admitted by operation of Rule 36." *Costello*, 55 N.E.3d at 353. Far from streamlining the process of arriving at a final judgment on the merits, the admissions sought here were basically an invitation for Garrett to plead himself

out of court. These considerations, as well as the balancing of the equities of the situation, place the trial court's granting of Garrett's motion regarding the RFA firmly within the trial court's discretion. We do not disturb its ruling.

### B. Summary Judgment - Reasonable Reliance

[16] Our analysis does not conclude there, however. Despite taking the admissions off the table, the trial court still granted the Dealership's motion for summary judgment. "'When this Court reviews a grant or denial of a motion for summary judgment, we stand in the shoes of the trial court.'" *Minser v. DeKalb Cnty. Plan Comm'n*, 170 N.E.3d 1093, 1098 (Ind. Ct. App. 2021) (quoting *Burton v. Benner*, 140 N.E.3d 848, 851 (Ind. 2020)). "Summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting *Murray v. Indianapolis Pub. Schs.*, 128 N.E.3d 450, 452 (Ind. 2019)); *see also* Ind. Trial Rule 56(C).

[17] The summary judgment movant invokes the burden of making a *prima facie* showing that there is no issue of material fact and that it is entitled to judgment as a matter of law. *Burton*, 140 N.E.3d at 851. The burden shifts to the non-moving party which must then show the existence of a genuine issue of material fact. *Id.* On appellate review, we resolve "[a]ny doubt as to any facts or inferences to be drawn therefrom . . . in favor of the non-moving party." *Id.*

[18] We review the trial court's ruling on a motion for summary judgment de novo, and we take "care to ensure that no party is denied his day in court." *Schoettmer*

*v. Wright*, 992 N.E.2d 702, 706 (Ind. 2013). "We limit our review to the materials designated at the trial level." *Gunderson v. State, Ind. Dep't of Nat. Res.*, 90 N.E.3d 1171, 1175 (Ind. 2018), *cert. denied*. Because the trial court entered findings of fact and conclusions of law, we also reiterate that findings of fact and conclusions of law entered by the trial court aid our review, but they do not bind us. *In re Supervised Estate of Kent*, 99 N.E.3d 634, 637 (Ind. 2018).

[19] The trial court's analysis with respect to the partial summary judgment motion boils down to the idea that Garrett should have taken a close look at the paperwork he was handed. If he had done so, or if any reasonable person had done so, he would have concluded that the statements regarding the warranty were untrue, and, thus, it would be unreasonable to rely upon them. The trial court correctly observes that "[t]here is nothing in the designated evidence to suggest the engine was actually covered by warranty." Appellant's App. Vol. II p. 17. There is, however, designated evidence supporting the claim that the Dealership *represented to Garrett* that there was such a warranty. The Dealership, of course, denies that fact, so there is no doubt that there is a genuine issue of material fact thereto. The question then becomes whether it was reasonable for Garrett to rely upon those representations, assuming they were made. This is a question for the jury. The trial court at once holds that there is no evidence either way with respect to whether Garrett examined the paperwork or merely relied upon the Dealership's characterizations of that paperwork, but also that Garrett "did not exercise reasonable prudence" by failing to discover the absence of a warranty. *Id*. at 18.

[20] The designated evidence raises more questions than it answers, and many of those questions are factual in nature. Thus, they are questions suited to the functions of a jury. The designated evidence is simply insufficient to allow the trial court to conclude that Garrett's reliance on the verbal representations of the dealership was unreasonable as a matter of law. [13] "As a general proposition . . . the reasonableness of the plaintiffs' reliance is usually a question for the trier of fact." *Allen v. Great Am. Rsrv. Ins. Co.*, 766 N.E.2d 1157, 1164 (Ind. 2002) (citing *Unlimited Servs., Inc. v. Macklen Enters., Inc.*, 401 S.E.2d 153, 155 (S.C. 1991); *Biberstine v. N.Y. Blower Co.*, 625 N.E.2d 1308, 1316 (Ind. Ct. App. 1993)). Our Supreme Court has determined that—in the context of summary judgment—one party may reasonably rely upon the representations of another even when those representations are contradicted or called into question by an informed reading of the policy or other documentation related to those representations. *Id.* This may well be an example of those circumstances, and, thus, summary judgment is not appropriate.

[21] We reverse the trial court's granting of the Dealership's motion for partial summary judgment, order the trial court to vacate that judgment, and remand for further proceedings consistent with this opinion.

---

[13] For clarity's sake, we also note that, to the extent the trial court suggests that Garrett designates no evidence that the misrepresentations were intentionally made as a part of a scheme to defraud him as it relates to the IDCSA, Garrett designated evidence that there were representations that there was a warranty, that the Dealership knew that the warranty had expired, and that it made the representations anyway. If the Dealership contests any of those propositions, it merely concedes that there are genuine issues of material fact.

Reversed and remanded.

Altice, C.J., and May, J., concur.